**ALEXANDER v. UNITED STATES.**

**No. 8417.**

United States Court of Appeals for the
District of Columbia.

Argued May 12, 1943.

Decided June 7, 1943.

Mr. Ira Chase Koehne, of Washington, D. C., for appellant.

Mr. Charles B. Murray, Assistant United States Attorney, of Washington, D. C., with whom Messrs. Edward M. Curran, United States Attorney, and Cecil R. Heflin, Assistant United States Attorney, both of Washington, D. C., were on the brief for appellee.

Before GRONER, Chief Justice, and VINSON and ARNOLD, Associate Justices.

GRONER, C. J.

Appellant was convicted in the District Court of bigamy and sentenced to serve a term in prison. It is admitted that at the time of his second marriage his first wife was living and that their marriage had not been terminated.

On the trial appellant testified that he was born in Spokane, Washington State; that for a period he had served in the armed forces of the United States and had received an honorable discharge; that in 1936 he was married in Washington State to Marie Cecilia Derry and lived with her there until October, 1938, when they separated; that he then left the State and after two years' sojourn in Miami, Florida, came to the District of Columbia where he met Emily E. Walsh, whom he married on March 29, 1941. He said that in making his second marriage he relied on a letter from his old home early in 1939 to the effect that his first wife had secured a divorce, that he believed the letter to have been written by one Ivan Harruff, and that he accepted it in good faith. He admitted that at the time of his marriage to Miss Walsh he told her that he had been married and divorced and that the child of his former marriage had been released to his custody, which was untrue. He testified he first learned in September of 1941 that the information he had received about his wife's divorce was not true, but had had doubts in the previous June or July, when his second wife opened a letter to him containing a writ issued in a divorce proceeding brought by his first wife in Idaho. As a result of this doubt he and his second wife separated, agreeing to be remarried after a divorce had been obtained by the first wife. Appellant also said that when he received the Harruff letter in 1939 he did not write back for details nor communicate with any member of his family or his wife's family, that his father, from whom he received letters from time to time, did not mention the rumored divorce, and that he made no effort to determine whether Harruff's information was correct or incorrect. He admitted that in applying for a license to marry in the District of Columbia he had stated to the Clerk of the Court that his first wife was dead, but explained this on the ground that he was nervous at the time.

At the close of the case appellant requested the Court to instruct the jury as follows: "If the defendant believed at the

time of the District of Columbia marriage that his wife had secured a divorce from him, then he must be acquitted." The Court declined to give this instruction, but did instruct the jury that if they believed beyond a reasonable doubt that at the time of the second marriage the first wife was living and that the marriage had not been dissolved by a valid decree of a competent court, they should find the defendant guilty. The main question in the case is whether the Court erred in refusing appellant's requested instruction and in giving the one it did.

Appellant's position is that where one accused of bigamy shows that the second marriage was contracted in an honest belief that the first marriage had been terminated, the statute is not violated, since there is no showing of criminal intent. The statute in the District of Columbia[1] provides that: "Whoever, having a husband or wife living, marries another shall be deemed guilty of bigamy, * * * Provided, That this section shall not apply to any person whose husband or wife has been continually absent for five successive years next before such marriage without being known to such person to be living within that time, or whose marriage to said living husband or wife shall have been dissolved by a valid decree of a competent court, * * *." This statute, the United States insist, makes the crime complete when the second marriage is contracted within the five year period and while the first wife is alive and undivorced.

The great weight of authority sustains the Government's position,[2] though there is respectable authority that an honest and reasonable belief that the first marriage has been terminated is a defence.[3] So far as we know, the question is new in the District of Columbia. In the light of the undisputed facts of this case it is not necessary that we answer it. The rule which denies the defence of good faith is a harsh

one and in a proper case where the information is such that a reasonable person, after an honest and thorough investigation, would have been justified in remarrying in reliance on it, we should be slow to hold that such a remarriage constituted a felony.

But even in those States taking the minority position it is necessary that the accused have made a *bona fide* and diligent effort to. ascertain the true facts. In the present case appellant's evidence wholly fails to measure up to this standard. His testimony goes no farther than the statement that he received information of the divorce in a letter which he neither retained nor answered. With every opportunity at hand· to ascertain the truth he made no effort to do so. He wrote neither his wife nor his or her family, nor any of his friends and he heard nothing from any of them. No case goes to the extent of declaring that an honest belief with respect to a matter of this nature may be rested on a mere rumor, which is all there was here. As was said in the Texas case of Gillum v. State,[4] there must be some honest and effective effort made to ascertain the truth before it can be claimed that a conclusion of fact has been reached in good faith. In this view appellant would clearly be guilty under either of the conflicting rules to which we have referred. See White v. State, 157 Tenn. 446, 9 S.W.2d 702. Hence the refusal to give the instruction asked and the giving of the other was not prejudicial error.

Appellant also assigns as error the fact that when he was brought from the State of Washington to the District of Columbia and taken to the bar of the District Court to plead to the indictment he was without counsel and entered a plea of not guilty without the advice of counsel, and that not until some time later in the day was counsel, at his request, appointed for him. This is said to be contrary to the

[1] D.C.Code 1940, Title 22, § 601.

[2] Garner v. State, 9 Ala.App. 60, 64 So. 183; Russell v. State, 66 Ark. 185, 49 S.W. 821, 74 Am.St.Rep. 78; People v. Kelly, 32 Cal.App.2d 624, 90 P.2d 605; Ellison v. State, 100 Fla. 736, 129 So. 887; Rogers v. Commonwealth, 24 Ky. Law Rep. 119, 68 S.W. 14; State v. Armington, 25 Minn. 29; State v. Trainor, 232 Mo. 240, 134 S.W. 528; State v. Zichfeld, 23 Nev. 304, 46 P. 802, 34 L.R.A. 784, 62 Am.St.Rep. 800; State v. Goonan, 89 N.H. 528, 3 A.2d 105; Ste-

phens v. State, 73 Okl.Cr. 349, 121 P. 2d 326; and State v. Hendrickson, 67 Utah 15, 245 P. 375, 57 A.L.R. 786.

[3] Robinson v. State, 6 Ga.App. 696, 65 S.E. 792; Lesueur v. State, 176 Ind. 448, 95 N.E. 239; State v. Sparacino, 164 La. 704, 114 So. 601; Baker v. State, 86 Neb. 775, 126 N.W. 300, 27 L.R.A.,N.S., 1097; State v. Stank, 9 Ohio Dec. 8; and Gillum v. State, 141 Tex.Cr.R. 162, 147 S.W.2d 778.

[4] 141 Tex.Cr.R. 162, 147 S.W.2d 778.

rule established by this Court in Evans v. Rives, 75 U.S.App.D.C. 242, 126 F.2d 633, and Wood v. United States, 75 U.S.App.D.C. 274, 128 F.2d 265. We think this point is sufficiently answered by what we subsequently said in McJordan v. Huff, 77 U.S.App.D.C. 171, 133 F.2d 408. There we held that the failure of the Court to appoint counsel at the moment of arraignment was not prejudicial where counsel was appointed immediately after and had full opportunity to withdraw the plea or to take such other action as was necessary or desirable without regard to what had previously transpired. We think that case is conclusive here on this point.

The other alleged grounds of error we have examined and find without merit, and on the whole case we are of opinion that the judgment should be affirmed.

Affirmed.

Mr. Justice VINSON sat during the argument of this case, concurred in the result when it was considered in conference, but resigned from the Court before the opinion was prepared.