**UNITED STATES of America**

v.

**Nicholas J. NIGRO, Appellant.**

**No. 12651.**

United States Court of Appeals
Third Circuit.

Argued Nov. 21, 1958.

Decided Jan. 29, 1959.

Robert B. Simon, Philadelphia, Pa. (I. Elmer Ecker, Pittsburgh, Pa., for Nicholas J. Nigro, on the brief), for appellant.

W. Wendell Stanton, Asst. U. S. Atty., Pittsburgh, Pa. (Hubert I. Teitelbaum, Pittsburgh, Pa., U. S. Atty., on the brief), for appellee.

Before BIGGS, Chief Judge, and MARIS and McLAUGHLIN, Circuit Judges.

BIGGS, Chief Judge.

Nigro, who conducted a restaurant business, was charged in a six count indictment with violating Section 1718(b) of the Internal Revenue Code of 1939, 53 Stat. 193, 26 U.S.C.A. § 1718(b), and Section 7201 of the Internal Revenue Code of 1954, 26 U.S.C.A. § 7201, by wilfully attempting to evade and defeat admissions taxes imposed by Section 1700 (e) of the Internal Revenue Code of 1939, 53 Stat. 190, as amended, 26 U.S.C. A. § 1700(e), and Section 4231(6) of the Internal Revenue Code of 1954, 26 U.S.C.A. § 4231(6), by filing false and fraudulent admissions tax returns for six periods of time as stated in the indictment. He was arraigned on October 24, 1957 before Judge Sorg and, represented by counsel of his own choice, Mr. Ecker, pleaded not guilty to each count. His case was set down for trial.

On April 8, Nigro appeared before Judge Willson. He was then represented by two additional counsel of his own choice, Mr. Lieber and Mr. Ruslander. The Assistant United States Attorney stated in open court that he understood that Nigro was prepared to withdraw his pleas of not guilty and to enter pleas of guilty to counts 2 and 3 of the indictment, it being understood that if he did so the United States would move to dismiss the remaining four counts upon pronouncement of sentence. Thereafter one of Nigro's three counsel, Mr. Lieber, his other two attorneys also being present, stated that he wished to request the court's permission for Nigro to enter pleas of *nolo contendere* to counts 2 and 3. The court rejected this offer, saying: "I don't want to force this man to plead guilty just because the court declines to accept that plea." Mr. Lieber then said, "He [Nigro] wants to withdraw the plea of not guilty and enter the plea of guilty to the second and third counts." The accused was then interrogated by the Assistant United States Attorney who ask-

ed him if any threats or promises had been made to him to induce the change of pleas. Nigro replied, "None whatsoever." Mr. Lieber then asked Nigro if the change of plea was made on recommendation of his counsel. Nigro replied: "Yes." The Assistant United States Attorney then inquired of Nigro if he was aware that the "punishment" might be a penalty of not more than $10,000 and imprisonment for five years, or both, on each count. Nigro stated that his counsel had so advised him and went on to say "Yes" to the further question whether with that understanding it was his intention to plead guilty to counts 2 and 3.

Nigro was then interrogated by Judge Willson. That interrogation, by question and answer, was as follows:

"Q. Mr. Nigro, you do that [plead guilty] understandingly and willingly? A. Yes, I do.

"Q. You change your plea? You now tell me that you wish to plead guilty? A. Yes, your Honor.

"Q. You realize you may go to jail, may go to prison, there may be a substantial fine? You hope not but you realize that may happen? A. I hope not.

"Q. You realize the possibilities of it, though, don't you? A. Yes." Judge Willson said: "He may enter his plea."

Mr. Lieber then stated to the court: "We are withdrawing the plea of not guilty entered October 24 and entering a plea of guilty." Nigro signed the pleas and Judge Willson said: "Now you have plead guilty to Counts 2 and 3." The Assistant United States Attorney stated, "Yes, your Honor." Judge Willson then said: "On this plea when the court has adjudged him [Nigro] guilty on Counts 2 and 3 the other counts will be dismissed." Sentence was deferred until a presentence report could be made by a probation officer and a time was fixed for sentencing the defendant.

On May 22 Nigro appeared before Judge McIlvaine for sentence. The United States Attorney himself was present and stated to Nigro that he, Ni-

gro, had entered a plea of guilty to counts 2 and 3 of the indictment and asked if there was any reason why he should not be sentenced. Nigro replied: "No." Judge McIlvaine then stated: "I have some things he [Nigro] said to the Probation Office before I go ahead with this \* \* \*" Judge McIlvaine went on to say: "What I want to know is one thing; I don't want to sentence any man on a plea of guilty who claims to be innocent. I want no claims of innocence on guilty pleas. \* \* \* Are you making any claims of innocence on this?" Nigro replied: "No, your Honor. I didn't mean it that way. I meant that when the thing was done, it wasn't done in a voluntary, deliberate manner; I felt that way." The court then said to Nigro: "You are charged with wilfully doing this, and I want to know whether it was wilful or not. If it wasn't wilfully done, I don't want any plea of guilty from any person who claims to be innocent. The charge is that you wilfully did this act. Did you wilfully do it or not?" Nigro replied: "I wilfully done it." The United States Attorney said: "Speak up, I can't hear you; I don't think the Judge can." Nigro replied: "Yes". The court then said: "There is some indication that you told people that you ran this plea to get it over with as a practical matter. I don't want any practical matters being settled in this Court. Did you wilfully do this?" Nigro replied: "Yes." The court again asked: "You did?", and Nigro again said, "Yes." The court then said: "All right, I accept the plea."

The United States Attorney and an FBI agent then began to state the case of the United States to the court when Mr.

Ecker stated: "Your Honor, may I interrupt a moment. I would like to talk to my client. I want to be sure he has no mental reservations about this whatsoever." Mr. Ecker and Mr. Lieber then consulted with Nigro, Mr. Ruslander, Nigro's third counsel, not being present. Mr. Lieber stated to the court: "Mr. Nigro has always had mental reservations respecting the wilfulness of this crime, as elaborated for you evidentially in the presentence investigation." [1] He asked leave to have Nigro withdraw the pleas of guilty, saying that Nigro "\* \* \* in his total understanding of this case [had] not committed in his [Nigro's] opinion the wilful crime of evasion of taxes that is necessary under the statute." Further conversation, not pertinent here, followed and the court then said, referring to Nigro's statements before the Probation Officer: "He [Nigro] was saying that the plea of guilty is not the right plea, that he is taking advice of his attorney and he wants to get it over with. He is emphatic that he did not wilfully cheat the government he tells my probation officer." More colloquy ensued between the court and counsel which need not be repeated here. The court suggested that a petition be filed by Nigro praying that authority be given to him to withdraw the pleas of guilty. Such a petition was filed and the matter came on for hearing before Judge Willson on June 19, 1958.

On that day a brief was filed signed by Mr. Lieber, and by Mr. Ecker "per" Mr. Lieber, in which the following statement was made: "Petitioner further contends that through inadvertence the plea of guilty was entered and that

1. We have the presentence report before us, having ordered the Clerk of the United States District Court to transmit it. We thought it necessary to have it because of the frequent references in the record to the Probation Officer's report respecting what Nigro said to the Probation Officer. Since there is a strong policy in favor of keeping such reports confidential, we have ordered it impounded. If the instant case is reviewed by the Supreme Court, the impounding or-

der will be vacated. If certiorari is not granted we will direct the Clerk of this court to transmit the impounded report to the Clerk of the District Court with the direction to that official to deliver it forthwith to the Probation Officer. All portions of the Probation Officer's report, pertinent to the present inquiry, appear in statements, albeit paraphrased, made to or by Judge McIlvaine or Judge Willson.

his [Nigro's] counsel should have filed a motion for dismissal of the indictment, which should have been brought under Section 7207 [sic] providing for a fine of $1,000.00 or imprisonment of not more than one year for the filing of a fraudulent return, as alleged in the indictment, rather than under Section 7201 of the Internal Revenue Code having to do with attempt to evade or defeat tax, or [sic] should have moved for dismissal on the ground that notice should have first been given of failure to collect, truthfully account for or pay over such tax, under Section 7512 of the Internal Revenue Code, and thereafter indictment should have been brought under Section 7202 of the Internal Revenue Code. Petitioner further contends that no such notice was ever given to him."

At the hearing on June 19, before Judge Willson Mr. Lieber stated that Nigro had "operated under a mistake of law and fact, through ignorance and inadvertence in entering his plea" and that Nigro asserted that "over his vehement protestations of innocence", he was prevailed upon by his counsel to plead guilty, and that he was not "guilty of the degree of wilfulness and deliberate intent" necessary to sustain the charges of the indictment. Nigro stated to Judge Willson: "The main thing that was told to me, [was] not to antagonize the court, or cause the court any more money than you possibly could [sic] * * *"

Judge Willson refused to permit the pleas of guilty to be withdrawn and informed Nigro that he would sentence him on June 24.

On June 24, Nigro appeared for sentence and the United States presented its case in part. During the course of this hearing, all three of Nigro's counsel being present, Mr. Lieber stated to the court: "Under the new section of the Code, Section 7512 of the Internal Revenue Code [enacted February 11, 1958], they give everybody, so to speak, one bite on this kind of taxes. It isn't the same thing as income taxes. Under that section [Section 7512] * * * it is stated that if some one fails to collect or

knowingly account for * * * this type of excise taxes, then the Secretary of Revenue is required to give them notice that they must do so, and failure to do so will be punishable as a misdemeanor. But they give them one chance. Heretofore, the Government has not pursued these cases as ardently."

The argument contained in the previous paragraph is in substance the same which was set forth in Nigro's brief and quoted hereinbefore. While this argument at time of sentencing, June 24, 1958, may have been a mistaken reference to an alleged congressional policy of leniency, Nigro's counsel had no sound legal basis for asserting in his brief previously referred to that Section 7512 gave Nigro another chance to pay the admissions taxes thereby escaping the sanction of the criminal law sought to be imposed on him by the indictment. The contentions made in Nigro's counsels' brief as to the reach of Section 7512 in the case at bar are legally untenable. Section 7512 is not applicable because the notice specified in that statute is required only in respect to taxes imposed by law after the effective date of the statute. Nigro's alleged offenses preceded that date. Moreover, the new section, Section 7512, could not affect criminal sanctions imposed by the provisions of the Revenue Code under which Nigro was indicted as stated in the first paragraph of this opinion. See S.Rep.No. 1182, 85th Cong., 2d Sess. (1958). Whether Nigro's desire to change his pleas may have been inspired at least in part by a misapprehension of the applicable law may be a matter for speculation but cannot be a decisive factor in the decision of this court.

■■ We have dealt with this matter in such detail because the circumstances are somewhat unusual and because a man's liberty is at stake. It is possible also that the instant case may reach the reviewing Tribunal and for its convenience it is desirable that the pertinent facts should be gathered into a single opinion. We have tried to present here all relevant factors. The court below

was required to exercise its legal discretion. See Kercheval v. United States, 1927, 274 U.S. 220, 224, 47 S.Ct. 582, 583, 71 L.Ed. 1009, in which the Supreme Court stated: "The court in exercise of its discretion will permit one accused to substitute a plea of not guilty and have a trial if for any reason the granting of the privilege seems fair and just." We note that immediately following the entering of pleas of guilty Nigro in his interview with the Probation Officer insisted in substance that he had not wilfully committed the crime with which he was charged and that he wanted the matter disposed of "to get it over with".[2] We observe also that when Nigro appeared before Judge McIlvaine on May 22, 1958, approximately seven months after his arraignment and after his interview with the Probation Officer he again admitted that he had wilfully committed the offenses with which he was charged and reiterated that admission again and again. As we have said, on that occasion the court was hearing the United States Attorney and an FBI agent on the issue of sentence when Mr. Ecker interrupted the proceedings and had further consultation with Nigro, and that it was after this consultation that Nigro returned to his earlier assertion of his lack of wilfulness.

■ We all know that an accused frequently desires to avoid the imposition of the penalties of the criminal law. The credibility and weight of Nigro's own assertions and those made on his behalf, such as the statement that he was overpersuaded by his counsel and pleaded guilty over his own vehement objections, were preeminently issues for Judge Willson before whom Nigro came on two occasions. Judge Willson had full opportunity to observe Nigro's demeanor and to test by the usual standards the questions of good faith and credibility. Certainly the requirements of Rule 11, Fed. R.Crim.Proc., 18 U.S.C., that a trial court

may not accept a plea of guilty "without first determining that the plea is made voluntarily and with understanding of the nature of the charge" were met in the instant case. Nigro was interrogated fully on the pertinent issues both by the Assistant United States Attorney and by Judge Willson before the pleas of guilty were accepted. We entertain no doubt that the pleas were entered only after serious consideration by Nigro and his counsel. Judge Willson in his memorandum of July 11, 1958 found that Nigro was well aware of the nature of his action in pleading guilty, finding him to be an intelligent individual, a "mature and successful business man." The fact that Nigro doubtless was influenced by his counsel to plead guilty is an insufficient ground for us to hold that the trial court's refusal to grant leave to change the pleas constituted an abuse of discretion.

■ It is well settled that unless abuse of discretion be shown the appellate tribunal will not reverse a refusal of the trial court to permit a plea of guilty to be withdrawn and a plea of not guilty substituted. United States v. Colonna, 3 Cir., 1944, 142 F.2d 210; United States v. Ballerstedt, 3 Cir., 1956, 234 F.2d 526; United States v. Fox, 3 Cir., 1942, 130 F.2d 56, at pages 59, 60; Hoyt v. United States, 10 Cir., 1958, 252 F.2d 460; United States v. Panebianco, 2 Cir., 1953, 208 F.2d 238, certiorari denied 1954, 347 U.S. 913, 74 S.Ct. 478, 98 L.Ed. 1069. Compare those cases arising under Rule 32 (d), Fed.R.Crim.Proc., 18 U.S.C., where the defendant has attempted to withdraw a plea of guilty after sentence is imposed on the ground that the withdrawal is necessary in order to correct manifest injustice. United States v. Shneer, 3 Cir., 1952, 194 F.2d 598; Edwards v. United States, 256 F.2d 707 (D.C.Cir.1958). Cf. United States v. Mack, 7 Cir., 1957, 249 F.2d 421.

Considering all the circumstances [3] in

2. See transcript p. 9, hearing of May 22, 1958.

3. We have read but we have excluded from our consideration the statements

made by the United States Attorney and the FBI agent following Judge Willson's refusal to permit the change of pleas on

the case at bar we cannot conclude that the court below abused its discretion. Consequently, the judgment will be affirmed.

the occasion on which Nigro was sentenced. We do not consider that por-

tion of the record pertinent to our determination of the issue here presented.