Charles Daniel EVERETT, Appellant,

v.

UNITED STATES of America, Appellee.

No. 18239.

United States Court of Appeals District of Columbia Circuit.

Argued March 2, 1964.

Decided Aug. 14, 1964.

Mr. Joseph F. Healy, Jr. (appointed by this court), Washington, D. C., for appellant.

Mr. William H. Willcox, Asst. U. S. Atty., with whom Messrs. David C. Acheson, U. S. Atty., Frank Q. Nebeker and Harold H. Titus, Jr., Asst. U. S. Attys., were on the brief, for appellee.

Before WILBUR K. MILLER, BURGER and WRIGHT, Circuit Judges.

BURGER, Circuit Judge.

Appellant entered a guilty plea to Counts 3 and 4 of a six-count indictment; prior to sentence he sought leave to withdraw these pleas and go to trial on these two counts. After an extended colloquy with appellant in the course of the hearing, the District Court permitted withdrawal of the guilty plea as to Count 3 but declined it as to Count 4 because no valid reason or basis for withdrawal had been claimed or shown. On the remaining guilty plea to Count 4 he sentenced appellant to nine years imprisonment under the Youth Corrections Act, 18 U.S.C. § 5010(c) (1958).

The six-count indictment charged three offenses arising out of unrelated robberies and one attempted robbery on a fourth occasion, spanning a period from April 1962 to January 1963.

At arraignment under FED.R.CRIM. P. 10 on February 25, 1963, appellant entered a plea of not guilty as to all six counts and was released on bail. Two months later, with retained counsel, he withdrew the pleas of not guilty to Count 3 (robbery) and Count 4 (assault with intent to commit robbery) and entered pleas of guilty as to both of these counts.[1] Before accepting these guilty pleas, the District Judge, pursuant to FED.R.CRIM.P. 11[2] and Resolution of the Judges of the U. S. District Court for the District of Columbia promulgated June 24, 1959 thereunder,[3] con-

---

1. On the basis of these two guilty pleas, the United States Attorney's Office moved the dismissal of the remaining four counts. Ruling on this motion has been held in abeyance by the District Judge pending disposition of this appeal.

2. FED.R.CRIM.P. 11 provides in part: "The court may refuse to accept a plea of guilty, and shall not accept the plea without first determining that the plea is made voluntarily with understanding of the nature of the charge. * * *"

3. RESOLVED, that it is the consensus of opinion of the Judges of this Court that in all cases in which defendant enters a plea of guilty the defendant should be interrogated by or under direction of the Court to establish the following facts:
   1. That defendant has been advised and understands that he has a right to a speedy trial by jury with the aid of counsel, but will have no such right if his plea of guilty is accepted.
   2. That he will have the assistance of counsel at the time of sentence if the plea is accepted.
   3. That defendant understands the nature of the charges against him which should be stated to him in brief by the Court notwithstanding a prior reading of the indictment.
   4. That defendant did in fact commit the particular acts which constitute the elements of the crime or crimes charged.
   5. That the guilty plea has not been induced by any promise or representation by anyone as to what sentence will be imposed by the Court.
   6. That he has not been threatened or coerced by anyone into making the guilty plea.
   7. That no promises of any kind have been made to him to induce the guilty plea.
   8. That he has an understanding of the consequences of entering the plea of guilty.
   9. That he is entering the plea voluntarily and of his own free will

ducted an extensive interrogation of appellant as to the facts of the alleged crimes and his reasons for pleading guilty thereto. Appellant freely admitted the charges: as to Count 3 he said, "I went in and robbed the place * * * by myself * * * [and took] about $200.00, sir"; as to Count 4 he said, "Well I entered the liquor store and I demanded money, sir; and well I just remember being shot; that's about all." He stated further that he had brandished a gun both times but did not shoot it; that on the latter occasion one of the liquor store employees had shot him; and that he had been apprehended the following day when he had gone to the hospital for treatment of the gunshot wound. The District Judge interrogated appellant carefully as to his awareness of the possible sentence; appellant reiterated his guilt [4] and said he was pleading guilty because he was guilty and not because the Government had moved to dismiss four other counts should he plead guilty to Counts 3 and 4.[5]

Three weeks later, appellant, with his retained counsel, filed a motion under FED.R.CRIM.P. 32(d)[6] to withdraw his guilty pleas to Counts 3 and 4. On June 27, 1963, the District Court conducted a hearing on the motion and at this time appellant said he was innocent of the Count 3 robbery charge and had pleaded guilty to that count only because he "was so confused and worried * * * [and] wanted to try to get this over as soon as possible." As to Count 4, however, he stated to the Court: "Well, Your Honor, I am guilty of that charge. I did attempt to rob this place. That's all." [7] The District Judge granted the motion to withdraw the plea as to Count 3 but denied the motion as to Count 4 [8] on which guilt was admitted.

Appellant is now represented by court-appointed counsel who urges that the District Court committed reversible error in refusing to permit withdrawal of the guilty plea to Count 4 in the circumstances shown here.

We disagree emphatically. We have held that withdrawal of a guilty plea, made by a defendant unrepresented by counsel, "should be freely allowed" when he seeks withdrawal *before* sentencing. Poole v. United States, 102 U.S.App.D.C. 71, 75, 250 F.2d 396, 400 (1957).[9] More

because he is guilty and for no other reason.

10. That he has discussed the entry of his plea of guilty fully with his attorney.

IT IS FURTHER RESOLVED, that it is the consensus of opinion of the Judges of this Court that [a] plea of guilty shall be accepted only when the Court is satisfied that he is guilty and that he is entering the plea voluntarily and of his own free will, and with an understanding of his rights, of the charges against him, and the consequences of entering the plea.

4. See note 3, *supra*, at Pt. 5.

5. See *id.* at Pt. 9. See note 1, *supra*.

6. "A *motion to withdraw* a plea of guilty or of *nolo contendere* may be made only before sentence is imposed or imposition of sentence is suspended; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his plea." FED.R.CRIM.P. 32(d).

7. Count 6 charged carrying an unlicensed pistol which had been used in the attempted robbery. It was in this "attempt to rob" that appellant was allegedly shot by the liquor store employee.

8. In his statement to the Court at the time of sentencing appellant said: "Well, I haven't anything to say about my sentence, but I have something to say about why I did this crime. * * * Well, the only reason why I did this crime, Your Honor, was because of my pregnant wife and unborn child. And she needed medical care, and I just didn't have any means to try to get her in the hospital." The Judge noted that he had information that indicated that appellant had been unemployed and his wife pregnant at the time of the offense; further colloquy revealed that appellant's wife had gone to Jamaica to live with her father.

9. We characterized our *Poole* holding in Gearhart v. United States, 106 U.S.App. D.C. 270, 273, 272 F.2d 499, 502 (1959), thus: "Where a guilty plea had been received from a defendant appearing without counsel, we said: 'Leave to withdraw a guilty plea prior to sen-

recently, in Gearhart v. United States, 106 U.S.App.D.C. 270, 273, 272 F.2d 499, 502 (1959), Judge Washington, speaking for a unanimous court, noted that:

> "[T]he Supreme Court in broad dictum already had said that 'The court in exercise of its discretion will permit one accused to substitute a plea of not guilty and have a trial if for *any reason* the granting of the privilege seems *fair and just.*'
>
> \* \* \*
>
> "This is not to say that the District Court lacks all discretion in dealing with a motion of the present sort. But discretion must be exercised on the basis of sound information, soundly viewed. Where the accused seeks to withdraw his plea of guilty before sentencing, on the ground that he has a defense to

the charge, the District Court should not attempt to decide the merits of the proffered defense, thus determining the guilt or innocence of the defendant. In certain situations, where the issue raised by the motion to withdraw is one of tangential nature, resolvable apart from the merits of the case, the District Court may appropriately hold a factual hearing to determine whether the accused has a 'fair and just' reason for asking to withdraw his plea of guilty."

■■■ Far from showing a "'fair and just' reason" for a change of plea to Count 4, appellant demonstrated by his repeated statements that he had no reason other than wanting a trial on a charge of which he admitted his guilt.[10] Unlike Gearhart, appellant offered no defense to the charge,[11] nor did he allege.

---

tencing should be freely allowed.'" And see McJordan v. Huff, 77 U.S.App.D.C. 171, 133 F.2d 408 (1943). See also Alexander v. United States, 78 U.S.App. D.C. 34, 35–36, 136 F.2d 783, 784–785 (1943).

10. Indeed, although appellant at the April 25th hearing asserted his innocence of the charge contained in Count 3, he not only never claimed to be innocent of the charge in Count 4, but readily admitted it. Failure to make such an assertion of innocence, although not in itself dispositive, certainly militates against withdrawal. See United States v. Nagelberg, 323 F.2d 936 (2d Cir. 1963) (per curiam) (alternative ground), vacated on another ground, 377 U.S. 266, 84 S.Ct. 1252, 12 L.Ed.2d 290 (1964) (per curiam); United States v. Hughes, 325 F.2d 789, 792 (2d Cir.) (dictum that defendant must deny guilt), cert. denied, 377 U.S. 907, 12 L.Ed.2d 178, 84 S.Ct. 1167 (1964); cf. Zaffarano v. United States, 330 F.2d 114, 115 (9th Cir. 1964) (post-sentence motion), pet. for cert. filed, 32 U.S.L. WEEK 3433 (U.S. June 10, 1964) (O.T. 1964 No. 170); Smith v. United States, 116 U.S.App.D.C. 404, 408–409, 324 F.2d 436, 440–441 (1963) (same), cert. denied, 376 U.S. 957, 84 S.Ct. 978, 11 L.Ed.2d 975 (1964); Watts v. United States, 107 U.S.App.D.C. 367, 370–371, 278 F.2d 247, 250–251 (1960) (same); United States v. Paglia, 190 F.2d 445, 447 (2d Cir. 1951) (same), overruled on other

grounds, United States v. Taylor, 217 F. 2d 397 (2d Cir. 1954); United States v. Norstrand Corp., 168 F.2d 481, 482 (2d Cir. 1948) (same); Roberto v. United States, 60 F.2d 774, 775 (7th Cir. 1932) (same); United States v. Cooper, 222 F. Supp. 661, 663 (D.D.C.1963) (same), appeal dismissed, No. 17026, D.C.Cir., Jan. 6, 1964 (per curiam); United States v. Bice, 84 F.Supp. 290, 292 (D.Md.) (same), aff'd, 177 F.2d 843 (4th Cir. 1949) (per curiam): See generally Note, 112 U.PA.L. REV. 865, 877 n. 74 (1964). Of course, the mere assertion of a defendant's innocence will not require that leave to withdraw a guilty plea be granted prior to sentencing. United States v. Hughes, *supra;* see United States v. Nigro, 262 F.2d 783, 786–788 (3d Cir. 1959); United States v. Lester, 247 F.2d 496, 501 (2d Cir. 1957); United States v. Panebianco, 208 F.2d 238, 239 n. 1 (2d Cir. 1953) (per curiam), cert. denied, 347 U.S. 913, 74 S.Ct. 478, 98 L.Ed. 1069 (1954); United States v. Colonna, 142 F.2d 210, 211 (3d Cir. 1944); cf. United States v. Fox, 130 F.2d 56, 60 (3d Cir.), cert. denied 317 U.S. 666, 63 S.Ct. 74, 87 L.Ed. 535 (1942).

11. See Kadwell v. United States, 315 F.2d 667, 668 n. 2, 671 (9th Cir. 1963); Briscoe v. United States, 102 U.S.App.D.C. 145, 251 F.2d 386 (1958) (per curiam); High v. United States, 110 U.S.App.D.C. 25, 28–29, 288 F.2d 427, 430–432 (dictum), cert. denied, 366 U.S. 923, 81 S.Ct.

involuntariness or any other factor which would militate against the correctness and truth of his guilty plea to Count 4 which was entered when he was represented by retained counsel.[12] His contention is virtually a claim of an absolute right to withdraw a guilty plea prior to imposition of sentence.[13] No court has ever so held; our use of the language "freely allowed" plainly implies the existence of some circumstances in which a defendant is *not* entitled to withdraw a plea of guilty before sentencing, and negates any absolute right to do so.[14] Overwhelming authority holds, as has this court, that withdrawal of a guilty plea before sentencing is not an absolute right[15] but a decision within the sound discretion of the trial court which will be reversed by an appellate court only for an abuse of that discretion.[16]

1350, 6 L.Ed.2d 383 (1961); *cf.* United States v. Lias, 173 F.2d 685, 688 (4th Cir. 1949) (alternative ground) (post-sentence permission to withdraw granted below and gov't appeal dismissed).

12. Indeed the record discloses that the effort to withdraw the plea and stand trial on all six counts was against the advice of appellant's retained counsel in the District Court. This was sound advice. Were appellant to stand trial on all charges, he could receive sentences cumulating more than 40 years imprisonment. We can only assume that court-appointed counsel is acting here solely at appellant's insistence on this course of action.

13. Far more reasonable rationales have been rejected by the Court of Appeals for the Second Circuit:
"[Appellant] argues that leave to withdraw a guilty plea *must* be granted when a defendant's claim of innocence is not frivolous and it will not be inequitable to the government—because of intervening destruction of evidence or otherwise—to afford a defendant a trial * * *."
United States v. Hughes, *supra* note 10.
"[Appellant] vigorously contends, however, that where the defendant insists that he is innocent of the charges contained in the indictment and offers 'any' explanation for his having pleaded guilty, the trial court should grant his motion to withdraw his plea of guilty * * *."
United States v. Colonna, *supra* 10 at 211 of 142 F.2d.

14. See United States v. Hughes, *supra* note 10. And see the balancing process engaged in by the court in Kadwell v. United States, *supra* note 11, 315 F.2d at 670–671.

15. Vasquez v. United States, 279 F.2d 34, 37 (9th Cir. 1960); United States v. Lester, *supra* note 10 at 500 of 247 F.2d; United States v. Panebianco, *supra* note 10, at 239 of 208 F.2d; Williams v. United States, 192 F.2d 39, 40 (5th Cir. 1951); Goo v. United States, 187 F.2d 62 (9th Cir.) (per curiam), cert. denied, 341 U.S. 916, 71 S.Ct. 735, 95 L.Ed. 1351 (1951); Bergen v. United States, 145 F.2d 181, 186 (8th Cir. 1944); United States v. Colonna, *supra* note 10; see United States v. Hughes, *supra* note 10; Rachel v. United States, 61 F.2d 360, 362 (8th Cir. 1932); Swift v. United States, 79 U.S.App.D.C. 387, 388, 148 F.2d 361, 362 (1945) (dictum); *cf.* Hoyt v. United States, 252 F.2d 460, 462 (10th Cir. 1958). And see Note, *Withdrawal of Guilty Pleas*, 55 COLUM.L.REV. 366, 379 (1955).

16. High v. United States, *supra* note 11, 110 U.S.App.D.C. at 29, 288 F.2d at 431; United States v. Hughes, *supra* note 10; United States v. Guerini, 296 F.2d 33, 34 (4th Cir. 1961); United States v. Moore, 290 F.2d 501 (2d Cir.) (per curiam), cert. denied, 368 U.S. 837, 82 S.Ct. 49, 7 L.Ed.2d 38 (1961); Vasquez v. United States, *supra* note 15; United States v. Nigro, *supra* note 10 at 787, 262 F.2d; United States v. Lester, *supra* note 15; United States v. Marcus, 213 F.2d 230, 232 (7th Cir.), cert. denied, 348 U.S. 824, 75 S.Ct. 39, 99 L.Ed. 650 (1954); United States v. Panebianco, *supra* note 15; Williams v. United States, *supra* note 15; Goo v. United States, *supra* note 15; Bergen v. United States, *supra* note 15 at 186–187, of 145 F.2d; Swift v. United States, *supra* note 15; United States v. Colonna, *supra* note 10; United States v. Fox, *supra* note 10 at 59–60 of 130 F.2d; Ward v. United States, 116 F.2d 135, 136 (6th Cir. 1940); Scheff v. United States, 33 F.2d 263, 264 (8th Cir. 1929); see United States v. Smiley, 322 F.2d 248, 249 (2d Cir. 1963) (per curiam); *cf.* Tomlinson v. United States, 68 U.S.App.D.C. 106, 108, 93 F.2d 652, 654 (1937), cert. denied sub nom., Pratt v. United States, 303 U.S. 642, 58 S.Ct. 645, 82 L.Ed. 1102 (1938); Hoyt v. United States, *supra* note 15; United

■■ A defendant who stands before a court freely admitting his attempted robbery does not remotely meet the standard of offering a "fair and just reason" for withdrawing his plea of guilty prior to sentence.[17] He must give some reason other than a desire to have a trial the basic purpose of which is to determine the very facts the defendant has just volunteered to the court on the record and while attended by his own counsel.[18]

■ The record reveals a guilty plea, intelligently and voluntarily made with assistance of retained counsel and candid admission of all essential elements of the crime in open court; this is hardly a predicate for an appellate holding that the District Judge abused his discretion in refusing to permit a withdrawal. We are not disposed to encourage accused persons to "play games" with the courts at the expense of already overburdened

calendars and the rights of other accused persons awaiting trial, whose cases may lose both their position on the calendar and the Court's time and facilities which are thus diverted for no useful purpose.[19]

Affirmed.

WRIGHT, Circuit Judge (dissenting):

Admitting the acts charged against him, the defendant nevertheless moved, unsuccessfully, to withdraw his plea of guilty[1] and go to trial. On allocution, he stated that he stole because he was poor, in order to provide necessary medical care for his pregnant wife.[2] The defendant is not articulate, but his claim seems to make him out as a modern Jean Valjean, who was convicted of burglary for stealing bread for his starving children.

At the time of his motion to withdraw his guilty plea, the defendant here had not been sentenced.[3] And it appears

States v. Lias, *supra* note 11. *But cf.* Kadwell v. United States, *supra* note 14.

In the recent *Nagelberg* case, the Supreme Court held that the District Court had discretion to permit the withdrawal of a guilty plea on a motion in which the Government had acquiesced because of defendant's extensive cooperation. The Court vacated the judgment of the Court of Appeals, 323 F.2d 936 (2d Cir. 1963) (per curiam), and remanded the case to the District Court for further proceedings in conformity with its opinion; it did not direct that leave to withdraw the plea be granted. Nagelberg v. United States, 377 U.S. 266, 84 S.Ct. 1252, 12 L.Ed.2d 290 (1964) (per curiam).

17. A defendant seeking leave to withdraw a guilty plea prior to sentencing bears the "burden of establishing grounds for the withdrawal." United States v. Smiley, *supra* note 16; see United States v. Lester, *supra* note 10 at 501. For discussion of the grounds that may justify withdrawal of a guilty plea before sentencing, see Williams v. United States, *supra* note 15; Bergen v. United States, *supra* note 16; United States v. Colonna, *supra* note 10 at 211–212 of 142 F.2d; Ward v. United States, *supra* note 16 at 137 of 33 F.2d; Rachel v. United States, *supra* note 15.

18. The dissent seems to assume that when the defendant at the time of sentencing explained his reasons for the crime, see

note 8 *supra*, the District Court was required sua sponte to vacate its earlier denial of the motion to withdraw the guilty plea. No authority supports such a view. These reasons do not, as the dissent intimates, go to the existence of *mens rea* in the appellant: there is no criminal-responsibility issue here; rather, Everett's reasons only explain his motives for doing a voluntary act. As such, they are irrelevant in our system of criminal justice.

19. This court has considered numerous appeals in which challenged trial delay was caused in part by unavailability of a judge.

1. Rule 32(d), F.R.Cr.P., provides:
"A motion to withdraw a plea of guilty * * * may be made only before sentence is imposed * * *; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his plea."

2. THE DEFENDANT: "Well, the only reason why I did this crime, Your Honor, was because of my pregnant wife and unborn child. And she needed medical care, and I just didn't have any means to try to get her in the hospital."

3. See Rule 32(d), set out in Note 1, *supra*. It is worthy of note that only the right to move to withdraw a plea of guilty prior to sentence and the right to appeal are specifically protected by the Act of Congress, 18 U.S.C. §§ 3771–3772, authoriz-

that, had the motion been granted, the Government would have suffered no prejudice. Thus I would have thought that, under the circumstances, the defendant should have been allowed to withdraw his guilty plea as a matter of course.[4]

But Judge Burger's scholarly opinion has demonstrated that the cases have established a different standard. And the Supreme Court has recently spoken in a case where, as here, the defendant admitted the acts charged;[5] it applied the rule that while he may properly withdraw a guilty plea prior to sentencing, there must be some good reason for allowing him to do so.[6] Thus the issue framed for us is whether sufficient reason exists to withdraw the plea when the defendant claims mitigating circumstances and apparently seeks to have the jury pass, not on the issue of the historical facts charged, but on the issue of culpability.

Our juries properly pass on the culpability of the accused. An element of the crime charged is *mens rea,* and if the jury cannot find that that state of mind existed in the accused, it must acquit. Thus, in the extreme instance, a verdict of not guilty by reason of insanity is tantamount to a finding of "proved" on the Government's charge concerning certain events, but a finding of "not culpable" on the defendant's claim concerning his state of mind. A verdict of "not guilty" may have a similar meaning; when the defenses of self-defense, privilege or excuse are raised, for example, a jury may find that the deed was done, but that the man is no criminal. Indeed, it has been recognized as an "elementary principle of justice" that "when a man's life or liberty is at stake he should be adjudged according to his personal culpability as well as by the objective seriousness of the crime." Fisher v. United States, 328 U.S. 463, 492, 66 S.Ct. 1318, 90 L.Ed. 1382 (1946) (dissenting opinion of Mr. Justice Murphy).

This power of the jury to pass upon culpability is reflected in the institution of the general verdict. Juries decide "guilty" or "not guilty," criminal or not criminal, rather than bring in a special verdict as to commission of the act charged to the accused. Reflected in the jury's decision is a judgment of whether, under all the circumstances of the event

---

ing rules of criminal procedure. The obvious purpose of Congress in protecting the right to withdraw the plea of guilty is to protect the right to trial by jury.

4. In Poole v. United States, 102 U.S.App. D.C. 71, 75, 250 F.2d 396, 400 (1957), we said:
"The trial court erred when it denied appellant's request to withdraw his plea of guilty. Leave to withdraw a guilty plea prior to sentencing should be freely allowed. As we said in McJordan v. Huff, 1943, 77 U.S.App.D.C. 171, 172, 133 F.2d 408, 409: ' * * * it goes without saying that a plea of guilty at that time [arraignment] can be and often is changed, on proper motion, *as a matter of course.'*" (Emphasis added by *Poole* court.)

5. Nagelberg v. United States, 377 U.S. 266, 84 S.Ct. 1252, 12 L.Ed.2d 290 (1964). Nagelberg's request to withdraw his guilty plea was with Government acquiescence; he had cooperated with the prosecutor who "'planned to dismiss the pending indictment against petitioner and substitute lesser charges.'" 377 U.S. at 266, 84 S.

Ct. at 1253. For his failure to aver innocence, see the opinion below, 2 Cir., 323 F.2d 936 (1963).
The trial judge, the Hon. Thomas F. Murphy, had had long experience as a prosecutor of national reputation; his refusal to grant the motion, therefore, cannot be ascribed to failure to understand the importance of defendant's cooperation with the prosecution, which was the basis of the Government's acquiescence in the motion. It is clear that the trial court, as well as the Court of Appeals, was applying to the motion to change the plea a more stringent test than the Supreme Court thought proper.

6. Kercheval v. United States, 274 U.S. 220, 224, 47 S.Ct. 582, 583, 71 L.Ed. 1009 (1927): "The court in exercise of its discretion will permit one accused to substitute a plea of not guilty and have a trial if for any reason the granting of the privilege seems fair and just." In Gearhart v. United States, 106 U.S.App.D.C. 270, 273, 272 F.2d 499, 502 (1959), in quoting this language, this court emphasized the words *"any reason"* and *"fair and just."*

and in the light of all known about the defendant, the prohibited act, if committed, deserves condemnation by the law.[7]

In one period in England, the Star Chamber punished juries who acquitted men who had obviously done the acts charged.[8] But, with the development of the common law, attaints, fines and imprisonments of juries were abolished, leaving juries free to find as the evidence and their oaths led them.[9] The Colonial case wherein John Peter Zenger[10] was prosecuted for seditious libel stands as a landmark instance where the defendant went to the jury on his admission of the facts charged and his claim, nevertheless, of no culpability. By acquitting Zenger, the jury fulfilled its role as protector against unjust laws or their unfair application. In the century following the Zenger case, it was generally recognized in American jurisprudence that the jury, agent of the sovereign people, had a right to acquit those whom it felt it unjust to call criminal.[11] In a leading case[12] at the end of the nineteenth century, the Supreme Court affirmed that the jury had this power, while a strong opinion for the minority[13] went further and reaffirmed the American common law tradition that this was no mere power of the jury, but their proper right.[14] Modern discussions in both criminal and civil law have re-emphasized this "dispensing function" of the jury.[15]

7. See FRANK, LAW AND THE MODERN MIND 170–185, 304–305 (1930); Curtis, Trial Judge and Jury, 5 VAND.L.REV. 150 (1952).

8. Juries were punished as late as the mid-seventeenth century for acquitting against the law and contrary to the evidence, and it was chiefly the court of Star Chamber that exercised this power. See 1 HOLDSWORTH, HISTORY OF ENGLISH LAW 164–165 (1903). In addition, the common law writ of attaint was available, according to some authorities, to punish a jury which "wrongly" decided a criminal case against the King. See 2 HALE, PLEAS OF THE CROWN *310.

9. In 1670, Chief Justice Vaughan held that the juror's verdict was a judicial act not punishable except by attaint, Bushell's Case, VAUGHAN 135 (C.P.Book 2), 6 HOWELL, STATE TRIALS 999, 124 Eng. Rep. 1006, which was by then obsolete, see 3 BLACKSTONE, COMMENTARIES *404, though not being formally abolished by statute until 1825, 6 GEORGE IV c. 50, § 60.

10. The Trial of John Peter Zenger, N. Y. Province, 1735, 17 HOWELL, STATE TRIALS 675 (1813).

11. See cases collected in Howe, Juries as Judges of Criminal Law, 52 HARV.L. REV. 582 (1939), cases collected in Mr. Justice Gray's dissenting opinion in Sparf and Hansen v. United States, 156 U.S. 51, 110–183, 15 S.Ct. 273, 39 L.Ed. 343 (1895), and cases collected and authorities cited in Farley, Instructions to Juries—Their Role in the Judicial Process, 42 YALE L.J. 194, 202–203 (1932). In some jurisdictions, constitutional provisions guaranteed that "in the trial of all criminal cases the jury shall be the judges of the law as well as fact." Art. 10, § 5, Maryland Constitution of 1851.

12. Sparf and Hansen v. United States, supra Note 11.

13. Mr. Justice Gray, dissenting, 156 U.S. at 110–183, 15 S.Ct. 273.

14. In Horning v. District of Columbia, 254 U.S. 135, 41 S.Ct. 53, 65 L.Ed. 185 (1920), where, on the undisputed facts, the trial judge told the jury that the defendant had to be found guilty, Mr. Justice Holmes noted for the Court that "the jury has the power to bring in a verdict in the teeth of both law and facts," 254 U.S. at 138, 41 S.Ct. at 54, and Mr. Justice Brandeis' minority opinion also noted that "it is still the rule of the federal courts that the jury in criminal cases renders a general verdict on the law and the facts; and that the judge is without power to direct a verdict of guilty although no fact is in dispute." 254 U.S. at 139, 41 S.Ct. at 54.

15. In this regard, Professor James has collected a number of leading authorities in his article on tort law and the judicial process:

"Throughout the history of the jury system it has been recognized that the jury does not always stick to its theoretical function and apply the law in the judge's charge to the facts as they find them. Juries sometimes take the law into their own hands and decide a case according to popular prejudice which often embodies popular notions of what the law ought to be. It has also been recognized that this fact is not always

The mitigating circumstances the defendant here claims may not be enough to convince the jury that his crime is excusable, but to my mind his desire to raise the issue of culpability for jury decision may be sufficient cause to allow him to withdraw his plea of guilty and go to trial.

The recent ruling [16] of the Supreme Court, handed down subsequent to the decision of the District Court here, indicates that the withdrawal of the guilty plea before sentence by one who admits his guilt may be proper. The case before us is a stronger one than the case before the Supreme Court, for here the defendant wishes to raise an issue as to his culpability. Perhaps the district judge here, like the district judge in that case, was unaware that under the law a defendant may change his plea before sentencing, even where he does not challenge the commission of the act charged against him. I would therefore vacate the decision below and remand for consideration in the light of the recent Supreme Court opinion.[17]

a weakness but sometimes a great strength of the jury system. Lord Coke is reported to have said 'the jurors are Chancellors.' [Quoted from POUND, AN INTRODUCTION TO THE PHILOSOPHY OF LAW 133 (1922).] Holmes said 'one reason why I believe in our practice of leaving questions of negligence to them is precisely one of their gravest defects from the point of view of their theoretical function: that they will introduce into their verdict a certain amount—a very large amount, so far as I have observed—of popular prejudice, and thus keep the administration of the law in accord with the wishes and feelings of the community.' [HOLMES, COLLECTED LEGAL PAPERS 237–238 (1921).] Pound concluded that 'Jury lawlessness is the great corrective of law in its actual administration.' [Pound, Law in Books and Law in Action, 44 AM.L.REV. 12, 18 (1910).] One of our ablest trial judges of today has noted that 'traditionally juries are the device by which the rigor of the law is modified pending the enactment of new statutes.' [Wyzanski, A Trial Judge's Freedom and Responsibility, 65 HARV.L.REV. 1281, 1286 (1952).] Justice Traynor of the California Supreme Court believes that 'we would lose more than we would gain by a reform of fact-finding that would only compel righteous adherence [by juries] to wrong rules. * * *' Until the rules themselves are changed we are better off 'with that quiet distortion that presently adapts them to the needs of rough justice.' [Traynor,

Fact Skepticism and the Judicial Process, 106 U.PA.L.REV. 635, 639, 640 (1958).]
"It is not, I submit, an improper abdication of responsibility to the jury to call on its dispensing power—its equitable function—when the occasion is appropriate. * * *"
James, Tort Law in Midstream: Its Challenge to the Judicial Process, 8 BUFFALO L.REV. 315, 342–343 (1959).

And Professors Paulsen and Kadish have noted: "It has often been suggested that juries are agencies of mitigation in that they may serve to bring the law up to date by applying it in a way consistent with present-day community values." PAULSEN & KADISH, CRIMINAL LAW AND ITS PROCESSES 1107 (1962).
It has also been said that:
" * * * Many an acquittal, many a judgment for the defendant, is * * * an admonition to go and sin no more. Just as the good physician treats the patient as well as the disease, so too the jury sits in judgment on the offender as well as on the offense.
* * * * * * *
" * * * Practically, and ignoring pretensions to logic, there are exceptions, and the law looks to the jury to make them, because it does not feel able to make intelligible rules to cover them; nor does it want to admit that the law is less than a complete system."
Curtis, op.cit.supra Note 7, 155–156, 157. See also Frank, op.cit.supra Note 7.

16. See Note 5, supra.
17. Ibid.