**John H. GOODING, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 84–753.

District of Columbia Court of Appeals.

Submitted Nov. 12, 1985.
Decided Aug. 20, 1986.

J. Herbie DiFonzo, Washington, D.C., appointed by the court, was on the brief, for appellant.

Joseph E. diGenova, U.S. Atty., Michael W. Farrell, Judith Hetherton, Darryl Jackson, L. Jackson Thomas, and Debra N. Diener, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before MACK, FERREN, and ROGERS, Associate Judges.

MACK, Associate Judge:

We are asked to review the denial, after a hearing, of appellant John Gooding's Rule 32(e) motion to withdraw his plea of guilty to kidnapping. In the trial court, appellant argued that his plea was involuntarily entered and that it was fair and just that it be withdrawn. On the record before us, we conclude that withdrawal of the plea should have been permitted as fair and just under the circumstances, and also that the plea was accepted without an adequate inquiry pursuant to Rule 11. We reverse and remand on these two independent grounds, so that appellant can have the opportunity to put an asserted coercion defense before a jury.

I

Briefly, the facts surfacing from the government's cursory proffer of evidence at the time of plea show that on April 5, 1982, Lawrence McIntyre was abducted at gunpoint from a street in the District of Columbia. He was taken to an address in Northwest Washington where he was handcuffed and held against his will. McIntyre was subsequently moved to Baltimore, Maryland, and Springfield, Virginia. During his period of incarceration, which lasted until the following day, McIntyre was assaulted with a gun.

According to his testimony at the plea withdrawal hearing, appellant's involvement in this crime began when, for an unrelated purpose, he called to the apartment of his codefendant, Kenneth Bass.[1] After discovering that McIntyre was being held on the premises against his will, appellant nevertheless stayed there in a posture that facilitated the kidnapping. In contrast to Bass, appellant does not appear to have employed either guns or handcuffs. He acted with consideration towards the victim.

The kidnapping of McIntyre was among a series of connected offenses involving two other victims. Bass was the acknowl-

---

1. Appellant testified that he visited Bass in the District of Columbia in order to obtain a promised $800 loan to help him make mortgage payments on the North Carolina house in which he lived with his wife and children. The record does not disclose whether the loan was ever received. At any rate, unable to make the payments, appellant later lost the residence.

edged principal in all of these crimes.[2] A third participant has seemingly never been apprehended. Appellant had become acquainted with Bass several years previously when they served a prison sentence in Butner, North Carolina. Both men, at that time, were members of a religious group known as the Moorish Science Temple of America, to which appellant was introduced by other prisoners.

On November 30, 1983, appellant pled guilty to aiding and abetting Bass in the kidnapping of McIntyre.[3] *See* D.C.Code § 22–2101 (1981). Prior to sentencing, within a few days of its entry, appellant sought to withdraw his guilty plea. New counsel was appointed and on January 30, 1984, the Rule 32(e) withdrawal motion was filed in the trial court. On April 23, 1984, appellant presented testimony that his guilty plea had not been voluntarily entered and that his participation in the McIn-

tyre kidnapping had been coerced by his admittedly violent codefendant. On May 18, 1984, the trial court denied the withdrawal motion and proceeded to sentence appellant to twelve to thirty-six years in prison, all but five years to be suspended, with a five year probation period to follow his release.

## II

■ The backdrop against which any discussion concerning the withdrawal of guilty pleas must be set is the dominance of such dispositions in our criminal justice system. In 1985, guilty pleas accounted for 87.1% of all adult felony convictions and 91.4% of all adult misdemeanor convictions in the Superior Court. THE DIST. OF COLUMBIA GOV'T, INDICES—A STATISTICAL INDEX TO DISTRICT OF COLUMBIA SERVICES 224 (1986). By pleading guilty, an accused surrenders a whole panoply of constitutional rights.[4]

---

2. Bass was convicted after a jury trial, before appellant's guilty plea was entered, and sentenced to eighty-seven years to life imprisonment. We affirmed his convictions in an unpublished opinion. *Bass v. United States,* No. 83–837 (D.C. June 29, 1984).

3. The nine remaining counts of the indictment were dismissed under the terms of a plea bargain.

4. The Supreme Court has determined that a valid guilty plea operates as a waiver of several constitutional rights. These include the Fifth Amendment right against compulsory self-incrimination, the Sixth Amendment rights to a jury trial and to confront the opposing witnesses, *Boykin v. Alabama,* 395 U.S. 238, 243, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274 (1969); *McCarthy v. United States,* 394 U.S. 459, 466, 89 S.Ct. 1166, 1170, 22 L.Ed.2d 418 (1969), and the Fourteenth Amendment right against racially discriminatory grand jury selection, *Tollett v. Henderson,* 411 U.S. 258, 266, 93 S.Ct. 1602, 1607, 36 L.Ed.2d 235 (1973). In the *"Brady* Trilogy" the Supreme Court held that specific Fifth Amendment claims against self-incrimination were waived by valid guilty pleas. *Parker v. North Carolina,* 397 U.S. 790, 796–98, 90 S.Ct. 1458, 1462–63, 25 L.Ed.2d 785 (1970) (claim that confession was inadmissible); *McMann v. Richardson,* 397 U.S. 759, 774, 90 S.Ct. 1441, 1450, 25 L.Ed.2d 763 (1970) (same); *Brady v. United States,* 397 U.S. 742, 748, 758, 90 S.Ct. 1463, 1468, 1474, 25 L.Ed.2d 747 (1970) (claim that state death penalty statute unconstitutionally

coerced guilty pleas in order for defendants to obtain lesser sentences).

Various federal courts of appeals have decided that other constitutional rights are also lost by entry of a valid guilty plea. By reference to these decisions, we do not suggest that we would necessarily approve their holdings if similar issues were presented in this jurisdiction. Such cases hold that a defendant who has pled guilty cannot obtain appellate review of "nonjurisdictional" challenges to the conviction. *See, e.g., Slayton v. Willingham,* 726 F.2d 631, 634 (10th Cir.1984) (per curiam); *Rogers v. Maggio,* 714 F.2d 35, 38 n. 5 (5th Cir.1983). Particular examples are holdings that the accused cannot assert the Fourth Amendment right against illegal searches and seizures, *e.g., United States v. Johnson,* 634 F.2d 385, 386 (8th Cir.1980) (per curiam); *Larios-Mendez v. INS,* 597 F.2d 144, 145–46 (9th Cir.1979) (per curiam), the Fifth Amendment right against coerced confessions, *e.g., United States v. Magnuson,* 680 F.2d 56, 58 (8th Cir.1982) (per curiam); *Franklin v. United States,* 589 F.2d 192, 194–95 (5th Cir.) (per curiam), *cert. denied,* 441 U.S. 950, 99 S.Ct. 2177, 60 L.Ed.2d 1055 (1979), and the Sixth Amendment right to speedy trial, *e.g., Tiemens v. United States,* 724 F.2d 928, 929 (11th Cir.) (per curiam), *cert. denied,* 469 U.S. 837, 105 S.Ct. 134, 83 L.Ed.2d 74 (1984); *United States v. Yunis,* 723 F.2d 795, 796 (11th Cir.1984). An assertion of a due process violation by reason of excessive bail was also waived by a valid guilty plea. *Lambert v. United States,* 600 F.2d 476, 477–78 (5th Cir.1979).

Because the consequences are so grave, Rule 11 lays down stringent procedural requirements regulating the entry of guilty pleas, while Rule 32(e) provides a remedial mechanism for their withdrawal where the interests of justice so require. On appeal, this court rigorously scrutinizes both proceedings to ensure that the vast majority of criminal defendants who plead guilty have truly abandoned their constitutional right to a trial with its attendant safeguards.

▮▮▮ An accused can successfully move to withdraw a guilty plea under Rule 32(e) [5] by establishing either of two independent grounds. The first is proven if the defendant shows that there was a defect in the Rule 11 proceeding at which the guilty plea was entered.[6] Paragraph (d) of Rule 11 obliges the trial court to ensure that "any guilty plea represent a voluntary and intelligent choice among the alternative courses of action open to the defendant," *Byrd v. United States,* 377 A.2d 400, 404 (D.C.

Apart from the loss of constitutional rights, some federal appellate courts have also held that other, non-constitutional rights are lost by entry of a valid guilty plea. Again, our advertance to these cases does not necessarily denote approval. Examples are decisions that an accused cannot obtain review of various prosecutorial defects, *e.g., United States v. Fletcher,* 731 F.2d 581, 582–83 (8th Cir.) (per curiam), *cert. denied,* 469 U.S. 845, 105 S.Ct. 155, 83 L.Ed.2d 92 (1984); *United States v. Boniface,* 631 F.2d 1228, 1229 (5th Cir.1980) (per curiam), or statutory violations occurring before entry of the guilty plea, *e.g., United States v. Hobson,* 686 F.2d 628, 629 (8th Cir.1982) (per curiam).

Entry of a valid guilty plea, however, does not foreclose jurisdictional attacks which assert that the state could not constitutionally prosecute. *Menna v. New York,* 423 U.S. 61, 63 n. 2, 96 S.Ct. 241, 242 n. 2, 46 L.Ed.2d 195 (1975) (per curiam) (prosecution barred by Double Jeopardy Clause); *Blackledge v. Perry,* 417 U.S. 21, 30–31, 94 S.Ct. 2098, 2103–04, 40 L.Ed.2d 628 (1974) (prosecution barred by Due Process Clause); *Haynes v. United States,* 390 U.S. 85, 87 n. 2, 88 S.Ct. 722, 725 n. 2, 19 L.Ed.2d 923 (1968) (raising previously asserted claim that prosecution barred because statute unconstitutional under Fifth Amendment right against self-incrimination); *see generally United States v. Curcio,* 712 F.2d 1532, 1538 n. 10 (2nd Cir.1983) (citing Westen, *A Way from Waiver: A Rationale for Forfeiture of Constitutional rights in Criminal Procedure,* 75 MICH.L.REV. 1214 (1977) ). Nor does a valid guilty plea preclude the assertion in federal habeas corpus proceedings of constitutional claims which were not forfeited under state law by entry of the plea. *Lefkowitz v. Newsome,* 420 U.S. 283, 95 S.Ct. 886, 43 L.Ed.2d 196 (1975). And the loss of constitutional claims occasioned by the guilty plea does not extend beyond the confines of the criminal proceeding itself. *Haring v. Prosise,* 462 U.S. 306, 322–23, 103 S.Ct. 2368, 2377–78, 76 L.Ed.2d 595 (1983) (42 U.S.C. 1983 claims survive guilty plea).

**5.** Super.Ct.Crim.R. 32(e) provides:

*Withdrawal of plea of guilty.* A motion to withdraw a plea of guilty or of nolo contendere may be made only before sentence is imposed or imposition of sentence is suspended; but to correct manifest injustice the Court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his [or her] plea.

Rule 32(e) is substantially identical to Fed.R. Crim.P. 32(d); this court frequently borrows from federal caselaw to assist in our interpretation of it.

**6.** Super.Ct.Crim.R. 11 provides, in relevant part:

(d) *Insuring that the plea is voluntary.* The Court shall not accept a plea of guilty or nolo contendere without first, by addressing the defendant personally in open court, determining that the plea is *voluntary and not the result of force or threats or of promises* apart from a plea agreement. The Court shall also inquire as to whether the defendant's willingness to plead guilty or nolo contendere results from prior discussions between the prosecutor and the defendant or his [or her] attorney.

\* \* \* \* \* \*

(f) *Determining accuracy of plea.* Notwithstanding the acceptance of a plea of guilty, the Court should not enter a judgment upon such plea without making such inquiry as shall satisfy it that there is *a factual basis* for the plea.

(g) *Record of proceedings.* A verbatim record of the proceedings at which the defendant enters a plea shall be made and, if there is a plea of guilty or nolo contendere, the record shall include, without limitation, the Court's *advice to the defendant,* the *inquiry into the voluntariness of the plea* including any plea agreement, and the *inquiry into the accuracy of a guilty plea.*

(h) *Harmless error.* Any variance from the procedures required by this Rule which does not affect substantial rights shall be disregarded.

(Emphasis partially added.) Rule 11 is substantially identical to Fed.R.Crim.P. 11 and, like Rule 32(e), we often draw from federal caselaw to interpret it.

1977), while paragraph (f) puts an additional obligation on the court to make "such inquiry as shall satisfy it that there is a factual basis for the plea." Failure by the court to meet these Rule 11 standards will require the subsequent grant of a Rule 32(e) withdrawal motion. *E.g., id.* Although we reverse only for an abuse of discretion, *id.* at 405, such plea withdrawal motions should be automatically granted, whether made before or after sentence, unless it is absolutely apparent under the terms of Rule 11(h) that any variance was purely technical and affects no substantial right in any way.[7] *McCarthy, supra* note 4, 394 U.S. at 471–72, 89 S.Ct. at 1173–74; *Barker v. United States*, 168 U.S.App.D.C. 312, 325–26, 514 F.2d 208, 221–22 (en banc), *cert. denied*, 421 U.S. 1013, 95 S.Ct. 2420, 44 L.Ed.2d 682 (1975). The strictness of our review of Rule 11 violations is necessary because a guilty plea cannot have the effect of waiving constitutional rights without due process, *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938) (quoted in *McCarthy, supra* note 4, 394 U.S. at 466, 89 S.Ct. at 1170), and we therefore correct even the slightest abuse of discretion by the trial court in denying this type of withdrawal motion.

 The second way in which an accused can seek to withdraw a guilty plea under Rule 32(e) is by showing, not that the Rule 11 proceeding was defective, but rather that justice demands withdrawal in the circumstances of the individual case. This latter route, understandably, will most frequently be relied upon by defendants whose guilty pleas are not vulnerable to attack for violation of Rule 11. *E.g., Gearhart v. United States*, 106 U.S.App.D.C. 270, 273–74, 272 F.2d 499, 502–03 (1959). The standard to be applied to these defendants—unlike that applicable to those whose guilty pleas were not shown at the Rule 11

proceeding to be voluntary, intelligent and supported by a factual basis—varies depending on whether the withdrawal motion is brought before or after sentencing. In such cases, a presentence withdrawal motion is regarded much more leniently and should be granted "if for any reason the granting of the privilege seems fair and just." *Kercheval v. United States*, 274 U.S. 220, 224, 47 S.Ct. 582, 583, 71 L.Ed. 1009 (1927); *see also Taylor v. United States*, 366 A.2d 444, 447 (D.C.1976) (per curiam); *Jordan v. United States*, 350 A.2d 735, 737 (D.C.1976). On fair and just motions, "[l]eave to withdraw a guilty plea prior to sentencing should ·be freely allowed." *Poole v. United States*, 102 U.S. App.D.C. 71, 75, 250 F.2d 396, 400 (1957) (citations omitted). A withdrawal motion which does not establish a Rule 11 violation and is brought after sentence, however, will prevail only upon a showing of "manifest injustice." *Shepard v. United States*, 363 A.2d 291, 293 (D.C.1976); *Bettis v. United States*, 325 A.2d 190, 195 (D.C. 1974). Whether brought before or after sentence, these motions are addressed to the sound discretion of the trial court and we reverse only upon a showing of abuse of such ·discretion. *Lorimer v. United States*, 425 A.2d 1306, 1308 (D.C.1981) (per curiam).

 The fair and just standard, which governs presentence withdrawal motions absent a Rule 11 violation, is viewed in light of a number of factors. None of these factors is controlling and the trial court must consider them cumulatively in the context of the individual case. Where the accused asserts, but fails to establish, a Rule 11 violation, the trial court should nonetheless consider the fair and just factors in order to determine whether that alternative standard demands that the withdrawal motion be granted. "We would

---

7. The Supreme Court has found on direct appeal that "prejudice inheres in a failure to comply with Rule 11," *McCarthy, supra* note 4, 394 U.S. at 471, 89 S.Ct. at 1173; *see, e.g., Canady v. United States*, 554 F.2d 203, 205 (5th Cir.1977), but has found a Rule 11 violation concerning "the formal requirements of the [r]ule" to be purely technical on a postconviction collateral attack, *United States v. Timmreck*, 441 U.S. 780, 784–85, 99 S.Ct. 2085, 2087–88, 60 L.Ed.2d 634 (1979).

caution the trial courts that, when faced with a presentencing request for withdrawal of a guilty plea, full inquiry should be made beyond the confines of the Rule 11 hearing." *Taylor, supra,* 366 A.2d at 447.

One important factor in these fair and just withdrawal motions is whether the defendant has asserted his or her legal innocence.[8] *Everett v. United States,* 119 U.S.App.D.C. 60, 63 n. 10, 336 F.2d 979, 982 n. 10 (1964). Such an assertion standing alone does not, of course, require that the motion be granted. *Patterson v. United States,* 479 A.2d 335, 340 (D.C.1984); *Austin v. United States,* 356 A.2d 648, 649 (D.C.1976) (per curiam). However, "[w]here the accused seeks to withdraw his [or her] plea of guilty before sentencing, on the ground that he [or she] has a defense to the charge, the ... [c]ourt should not attempt to decide the merits of the proffered defense, thus determining the guilt or innocence of the defendant." *Gearhart, supra,* 106 U.S.App.D.C. at 273, 272 F.2d at 502. On the other hand, the court may consider a weak government proffer of evidence to prove guilt. *Cf. Taylor, supra,* 366 A.2d at 447. Where innocence is asserted, the court should consider, according to the circumstances of the particular case, the reason why the claimed defense was not put forward at the time of original pleading. *Barker, supra,* 168 U.S.App. D.C. at 325, 514 F.2d at 221.

The court should look also to the length of delay between entry of the guilty plea and the desire to withdraw it: "A swift change of heart is itself strong indication that the plea was entered in haste and confusion; furthermore, withdrawal shortly after the event will rarely prejudice the government's legitimate interests." *Id.* at 326, 514 F.2d at 222. Withdrawal motions promptly made are regarded with "particular favor." *United States v. Roberts,* 187 U.S.App.D.C. 90, 99, 570 F.2d 999, 1008 (1977). Where there has been a delay, regard may be had to whether the government would be prejudiced by withdrawal of the plea, *United States v. Strauss,* 563 F.2d 127, 130–31 (4th Cir. 1977); *United States v. Savage,* 561 F.2d 554, 556–57 (4th Cir.1977), and "where such prejudice is absent or minimal, withdrawal is routinely permitted," *Roberts, supra,* 187 U.S.App.D.C. at 102, 570 F.2d at 1011.[9] Prejudice to the government's legitimate interests is measured as of the time at which the defendant seeks to withdraw the guilty plea, not later. *Id.* at 102 n. 51, 570 F.2d at 1011 n. 51. Another consideration is whether the accused has had the full benefit of competent counsel at all relevant times. *Barker, supra,* 168 U.S.App.D.C. at 326, 514 F.2d at 221. The circumstances of the individual case may reveal other factors which will affect the calculation as to withdrawal of the guilty plea under the fair and just standard.

**8.** Although important, a claim of legal innocence such as that made by appellant is not dispositive either way in determining, where a Rule 11 violation is not at issue, whether it is fair and just that a presentence withdrawal motion be granted. *See Taylor, supra,* 366 A.2d at 447 ("one relevant consideration"); *Barker, supra,* 168 U.S.App.D.C. at 324, 514 F.2d at 220 ("an important factor"); *Everett, supra,* 119 U.S. App.D.C. at 63 n. 10, 336 F.2d at 982 n. 10 ("not in itself dispositive"); *accord, Nagelberg v. United States,* 377 U.S. 266, 266–67, 84 S.Ct. 1252, 1252–53, 12 L.Ed.2d 290 (1964) (per curiam) (court has discretion to permit presentence withdrawal of guilty plea on grounds not including assertion of legal innocence). The dissent is therefore mistaken in describing "[a]n assertion of innocence [as] virtually a prerequi-

site to withdrawal of a voluntary plea." See *infra* dissent p. 1342. Similarly, the dissent throughout mischaracterizes a claim of innocence as "an independent ground justifying withdrawal of a guilty plea," rather than correctly treating it as one of many factors to be considered under the presentence fair and just standard.

**9.** *See also* STANDARDS FOR CRIMINAL JUSTICE § 14–2.-1(a) (1980) ("After entry of a plea of guilty or nolo contendere and before sentence, the court should allow the defendant to withdraw the plea for any fair and just reason unless the prosecution has been *substantially prejudiced* by reliance on the defendant's plea") (emphasis added).

Appellant argued in the trial court that it would be fair and just that his guilty plea be withdrawn. In view of the fact that appellant sought to withdraw his guilty plea almost immediately after its entry, and assuming the existence of no Rule 11 violation, the trial court was correct in accepting the fair and just standard as controlling. In concluding that the trial court abused its discretion in denying withdrawal of the plea under that standard, we balance in Part IV of this opinion the relevant factors which should properly have been considered. Because, however, the record before us raises serious questions as to whether the guilty plea was voluntarily and intelligently entered upon a sound factual basis, we also consider that issue, and find that the trial court accepted the plea without an adequate inquiry under Rule 11. We hold on these two independent grounds that the trial court abused its discretion in denying the Rule 32(e) plea withdrawal motion. We discuss the Rule 11 issue first.

### III

Before accepting a guilty plea, Rule 11 requires the trial court to address the defendant personally in open court to assure itself that the plea is being made voluntarily and is not the result of threats or promises, that the defendant understands the nature of the charge and the consequences of the plea, and that the plea is supported by a factual basis. *McCarthy, supra* note 4, 394 U.S. at 464–67, 89 S.Ct. at 1169–71. In *McCarthy,* the Supreme Court explained the purposes of the Rule 11 requirements as being to assist the trial court in making the constitutionally required determination that a defendant's guilty plea is truly voluntary and knowing and to produce a complete record at the time the plea is entered of the factors relevant to these determinations. 394 U.S. at 465, 89 S.Ct. at 1170. But:

> Rule 11 also requires the judge to satisfy himself [or herself] that there is a factual basis for the plea. The judge must determine "that the conduct which the defendant admits constitutes the offense

charged in the indictment or information or an offense included therein to which the defendant has pleaded guilty."

394 U.S. at 467, 89 S.Ct. at 1171 (quoting FED.R.CRIM.P. 11, NOTES OF ADVISORY COMMITTEE ON CRIMINAL RULES (1968)). The Supreme Court explained that the rule's three core requirements, that the plea be voluntary, knowing, and supported by a factual basis, are interrelated: "Because a guilty plea is an admission of all the elements of a formal criminal charge, it cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts." 394 U.S. at 466, 89 S.Ct. at 1171.

Therefore, to satisfy the requirements of Rule 11, the trial court "should engage in [as] extensive an interchange as necessary" to assure itself and any subsequent reader that the defendant fully understands the charges, is making a voluntary plea, and that the plea is supported by a factual basis. *United States v. Coronado,* 554 F.2d 166, 173 (5th Cir.), *cert. denied,* 434 U.S. 870, 98 S.Ct. 214, 54 L.Ed.2d 149 (1977); *see also United States v. Kincaid,* 362 F.2d 939, 941 (4th Cir.1966).

Mere recitation of boilerplate questions is insufficient. *Coronado, supra,* 554 F.2d at 173. "Rule 11 contemplates something more than conclusionary questions phrased in the language of the rule. It contemplates such an inquiry as will develop the underlying facts from which the court will draw its own conclusion." *Kincaid, supra,* 362 F.2d at 941. Nor can a defendant's terse responses to such conclusionary questions be deemed adequate to assure the court that the plea is voluntary, knowing and supported by a factual basis. *E.g., Williams v. United States,* 408 A.2d 996, 998–99 (D.C.1979) (The Court: "You are entering these [pleas] because you are guilty and for no other reasons?"—Defendant: "Yes, sir"; inquiry held insufficient); *Mack v. United States,* 635 F.2d 20, 24 (1st Cir.1980) (The Court: "Is your plea entirely free and vol-

untary?''—Defendant: "Yes, it is''; inquiry held insufficient). In other words, a record which does not affirmatively show that the requirements of Rule 11 were met provides insufficient support for the guilty plea.

Appellant's plea was entered in the following manner:

THE COURT: Are you pleading guilty to this count of unarmed kidnapping because you committed the crime?

APPELLANT: In that respect, yes sir.

THE COURT: There's not going to be any hedging here.

APPELLANT: In a respect.

DEFENSE COUNSEL: Yes.

THE COURT: All right. I'll hear the government's proffer.

After an inconclusive government proffer of guilt, see *infra* note 22 and accompanying text, the exchange continued:

THE COURT: What I need to know now is did you or did you not participate as a knowing associate in the undertaking in the kidnapping as I have described it to you of Mr. Lawrence McIntyre?

APPELLANT: Yes, Your Honor, I participated knowingly, however, I would like it to be noted unwillingly. It was knowingly.

THE COURT: You did it voluntarily but you had reservations, is that what you're saying?

APPELLANT: Yes, sir.

Without further inquiry into appellant's state of mind, either during the commission of the offense or at the time of the plea, the trial court thereupon entered a plea of guilty.

In situations, such as the present, where a defendant gives contradictory or ambiguous responses to the judge's questions, federal appellate courts have held that the trial court must conduct a more searching inquiry. *Mack, supra,* 635 F.2d at 24; *Canady, supra* note 7, 554 F.2d at

205; *Kincaid, supra,* 362 F.2d at 941. In *Mack,* the defendant entered his plea of guilty pursuant to a plea bargain. At the plea proceeding the defendant, despite some previous assertions to the contrary, eventually answered a routine inquiry by saying that his plea was entirely free and voluntary. The First Circuit identified a Rule 11 violation in the trial court's failure to "probe further or attempt to resolve the contradiction between that response and Mack's earlier statement that his plea was coerced." 635 F.2d at 24. In *Canady,* as here, during entry of the plea the defendant specifically denied the necessary element of criminal intent. He told the court that he "admitted about the [counterfeit] $10.00 bills, but now, as far as having any mischievous intentions, that I do not admit." 554 F.2d at 204. The Fifth Circuit held that this ambiguous remark required the court to fully determine whether the defendant understood the mental element of the charge against him. 554 F.2d at 205 (citing *Sierra v. Government of Canal Zone,* 546 F.2d 77, 79–80 (5th Cir.1977)). In *Kincaid,* the defendant maintained that he turned himself in because he was guilty of the charge, thus contradicting an earlier remark that he had done so in order to obtain medical treatment. Although the defendant agreed at the time of entry that his guilty plea was free and voluntary, the Fourth Circuit held that the trial court had failed in its duty to conduct careful probing to develop the relevant facts: "Here there was more than a negative failure of compliance with the [r]ule's requirements, there was a failure to observe the unfurled flags signalling danger and possible or probable infirmity in the defendant's capacity or volition, or both." 362 F.2d at 941. Having uncovered inconsistencies, ambiguities or gaps during the course of the Rule 11 inquiry, the trial court has a positive obligation to fill in the missing information before entering the guilty plea.[10]

10. This situation is not to be confused with an *Alford* plea, which does not violate Rule 11 requirements. In an *Alford* plea the record shows that the defendant, despite a simultaneous assertion of innocence, *voluntarily* and *intelligently* pled guilty, and that there was *a factual basis* for the plea. In a record such as the present, in contrast, we search in vain for

■ In the case before us, the trial court failed to discharge its Rule 11 obligation. It is true that appellant was fully informed of his rights at the plea proceeding. But, when he was later asked how he wished to plead, appellant's responses were ambiguous and unclear. As in *Kincaid*, his cryptic answers to routine questions were "unfurled flags" that signalled danger. The trial court had a duty to investigate further, for example, when appellant twice responded (once after being told that no "hedging" would be allowed) that he was pleading guilty because he had committed the crime "in a respect." Similarly, appellant's statement that he had committed the crime "knowingly, however, [he] would like it to be noted unwillingly" required the inherent ambiguities to be flushed out before a guilty plea could be accepted. The fact that appellant accepted without elaboration the trial court's version of events—"You did it voluntarily but you had reservations, is that what you're saying?"—is of no consequence where, as here, that one-sentence reformulation was couched in pithy, conclusionary language that was at least as opaque as the remark by appellant which prompted it.

The record of the Rule 11 proceeding does not satisfy us that there was a factual basis for the plea where at least one critical element of the kidnapping charge—the willingness of appellant's participation in a crime which requires a showing of specific

intent—was established neither by appellant's ambiguous responses nor the inconclusive government proffer, *compare Alford, supra* note 10, 400 U.S. at 32, 38, 91 S.Ct. at 164, 167 (factual basis was sufficient to support guilty plea where, among other facts, defendant accused of first-degree murder told the trial court how he left the house intending to kill the victim); nor can we conclude from the Rule 11 record before us that appellant had the necessary understanding of the mental element of the charge against him, *Canady, supra* note 7, 554 F.2d at 205; and, finally, the record sheds insufficient doubt on appellant's claim that his guilty plea was involuntarily entered,[11] *see Williams, supra,* 408 A.2d at 999 ("We hold that the record—particularly the plea proceeding—does not effectively rebut the appellant's allegation").

■ The trial court's failure to make the requisite inquiry in the face of these unresolved doubts leaves us with unanswered questions and thus constitutes a Rule 11 violation. In *McCarthy, supra* note 4, the Supreme Court held that "a defendant whose plea has been accepted in violation of Rule 11 should be afforded the opportunity to plead anew...." 394 U.S. at 472, 89 S.Ct. at 1174; *see also Byrd, supra,* 377 A.2d at 405. We conclude, because of this Rule 11 violation, that the trial court should have granted appellant's Rule 32(e) motion to withdraw his guilty plea.[12]

the missing pieces which would permit us to confidently determine that these essential Rule 11 requirements were met. *See North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

**11.** Appellant was never asked whether his plea was the product of force or threats. He was asked only one question which could possibly have indirectly elicited that required information: "are you under the influence of any drug, alcohol, or medication, or anything else for that matter that would prevent you from being able to think clearly or otherwise make an intelligent decision of your behalf?" Appellant answered "No, sir."

**12.** This court will not assume that a plea was entered voluntarily, intelligently and with a factual basis to support it, unless we are presented

with a Rule 11 record which permits us to do so. The approach of our dissenting colleague would undermine the whole purpose of a Rule 11 inquiry. The required factual basis, for example, includes a showing of the specific intent which is an element of the offense of kidnapping. In this respect, the dissent recognizes the "ambiguity" of the government's proffer of guilt and appellant's responses to the court, *see infra* dissent p. 1339, and concedes that these were "not inconsistent with a coercion defense," see *infra* dissent note 16. Yet, it declares: "I do not believe the trial court had an ... obligation to assure that [in pleading guilty] appellant expressly waived a coercion defense simply because he acknowledged reservations about his participation in the crime." See *infra* dissent pp. 1338–39. If this were so, a Rule 11 hearing would be stripped of any useful function.

## IV

Appellant argued that it was fair and just that he be permitted to withdraw his guilty plea prior to sentence. Putting aside, for the purposes of argument, the issue of the Rule 11 violation, we reverse and remand alternatively on the independent ground that the trial court abused its discretion in concluding that it would not be fair and just to grant appellant's presentence Rule 32(e) withdrawal motion.[13] It is by weighing the various factors set forth in Part II of our opinion that the fair and just calculation is made. We consider the effect of each in turn.

### Appellant's Assertion of Innocence

Appellant asserted his innocence by unequivocally insisting upon the existence of a coercion defense on several occasions before, during and after the withdrawal motion. He testified at the hearing on the motion, for example, as follows:

> DEFENSE COUNSEL: During the course of these transactions with Mr. Bass and the complainants, were you acting independently or were you following somebody's instructions?
>
> APPELLANT: Following somebody's instructions.
>
> \* \* \* \* \* \*
>
> Q. Whose instructions were you following?
> A. Kenneth Bass.
>
> \* \* \* \* \* \*
>
> Q. Did you have a belief what would happen to you if you didn't follow Mr. Bass' instructions?

> A. Yes, sir.
>
> \* \* \* \* \* \*
>
> Q. What was that belief?
> A. That I would possibly be harmed or maybe even killed.

Appellant told the court that he feared for the lives of the victims, himself, and his family, should he abandon Bass and depart the scene of the kidnapping. He thought: "that if I were to leave and that if some mischief befell Mr. Bass that I would in turn be subject to possible harm or death, along with members of my family." Appellant testified that he also feared that harm would come to the victims if he left Bass and he "knew that if something were to happen to them that I would possibly be facing some inconsequences [sic] as a result of that."

Appellant's fears of Bass stemmed from their acquaintance in prison in North Carolina, where appellant was introduced by other prisoners to the Moorish Science Temple of America, a group with which he is no longer associated. According to appellant, on several occasions Bass had told him that "if a member, you might say, betrayed another member, or turned against another member, that the wrath that would come upon him would be greater than any torture he had ever known." Appellant further testified to his understanding that Bass had served time for contract murder and had the names, addresses and telephone numbers of appellant himself and members of his family. He told the court that these facts had influenced him not to take an opportunity he had to escape from the scene of the kidnapping.[14]

---

13. The trial court correctly noted, on its assumption that no Rule 11 violation had been shown, that: "The standard for permitting the withdrawal of a guilty plea where the request is made prior to sentencing, as it was in this case, is a fair and just standard." *See Kercheval, supra,* 274 U.S. at 224, 47 S.Ct. at 583. The fair and just analysis is not generally applicable to presentence motions establishing a Rule 11 violation, where withdrawal is normally automatic. See *supra* Part II.

14. Appellant testified that he and McIntyre were in one of a "convoy" of two cars driven to Baltimore; Bass and the second hostage were in the other. The court was told that appellant gave McIntyre an opportunity to escape. McIntyre declined, perhaps out of concern for his fellow captive, and was handed back to Bass. According to the testimony, appellant made no attempt to escape at that time because he feared for the victims, his family and himself.

Appellant's former counsel also testified at the Rule 32(e) withdrawal motion. She told the court that appellant had informed her—prior to entry of the guilty plea—of his fears of Bass during the commission of the crime:

He said that Bass was acting like a crazy person, [appellant] was afraid about the religious aspects, and religious retaliation. Bass was acting very bizarre and violent, and [appellant] was afraid that if he were to leave, that Bass would come after him, because he knew where he lived. He knew where his family was. I know that Mr. Gooding's family was also afraid of Bass.

Having listened to appellant's fears, his counsel then discussed a possible coercion defense with colleagues in her office. The coercion defense was eventually rejected in favor of the guilty plea, partly because of appellant's refusal to testify due to his fear of Bass. See *infra* p. 1333.

Thus, the record confirms that appellant had talked to his counsel about his coercion defense before the Rule 11 proceeding entering the plea on November 30, 1983.[15] While the coercion defense was not expressly raised during entry of the guilty plea, appellant's cryptic responses were entirely consistent with it.[16] See *supra* p. 1328. After the plea was entered, appellant asserted the coercion defense in his written Rule 32(e) motion to withdraw the plea,[17] at the hearing on the withdrawal motion,[18] in proposed findings of fact and conclusions of law filed after the withdrawal motion,[19] and in this court on appeal from denial of the withdrawal motion.[20] Appellant's repeated assertions of legal innocence throughout these proceedings weigh heavily in favor of the conclusion that withdrawal of the guilty plea would be fair and just.[21]

### The Government's Inconclusive Proffer

Nothing in the government proffer at the time the guilty plea was entered negates appellant's claim that his participation was

15. Hearing on Motion to Withdraw Plea of Guilty, morning session, transcript at 21, 31–35, 47–50, 74–75, 81–92 (April 23, 1984); *id.*, afternoon session, transcript at 4, 13–17; Proceedings on trial court's denial of Motion to Withdraw Plea of Guilty, transcript at 4 (May 18, 1984).

16. Proceedings on trial court's entry of guilty plea, transcript at 7–9 (Nov. 30, 1983).

17. Motion to Withdraw Plea of Guilty, record at 53, 60–61 (Jan. 30, 1984) ("Counsel has determined that the defendant's conduct herein consisted virtually only of following codefendant Bass' instructions ... [and that] the defendant believed that his failure to do so would have resulted in death or serious bodily injury to himself at the hands of Bass, and that the defendant did not believe that he had a reasonable opportunity to escape without following Bass' orders").

18. Hearing on Motion to Withdraw Plea of Guilty, morning session, *supra* note 15, transcript at 6–7, 19–20, 23–25, 32–34, 56, 61–62.

19. Proposed Findings of Fact and Conclusions of Law on Defendant's Motion to Withdraw his Previously Entered Plea of Guilty, record at 88, 98 (May 16, 1984).

20. Brief for Appellant at 8–10 (April 26, 1985).

21. We are bound, as is our dissenting colleague (see *infra* dissent p. 1344), by authority which forbids us from speculating on the merits of appellant's asserted coercion defense. *Gearhart, supra*, 106 U.S.App.D.C. at 273, 272 F.2d at 502. We note in passing, however, that the trial court, which was in a better vantage point than we are, accepted at least some substance in appellant's claim of innocence, as did the government. During sentencing, immediately after its denial of the withdrawal motion, the trial court remarked: "just as you were afraid of Mr. Bass, the community is afraid of you" and, at another point, "[j]ust as you feared Mr. Bass, I'm sure the [victims] feared him as much if not more." Counsel for the government had previously declared:

Your Honor, I have been struck by, by what Mr. Gooding felt would befall him. All that I, that the government can say in that regard is that it is the very kind of fear that Mr. Gooding has that promotes that same kind of fear in other people. He participated in this situation because he was afraid that somebody else would hurt him. Yet he hurt somebody else, promoting this entire myth of this sect that one who betrays it is going to have some great catastrophe befall him.

coerced by fear of Bass.[22] Many of the acts described—for example the abduction and handcuffing at gunpoint—took place before appellant's arrival on the scene and most of the remainder—including the assault with the gun—were apparently done by Bass and the third participant who escaped apprehension.[23] Even if proved in its entirety, therefore, the government proffer would not necessarily defeat appellant's claim of innocence. The weakness of the government proffer tends towards withdrawal.

*The Reason why the Asserted Defense was not put forward at the Time of Original Pleading*

Another factor in the fair and just calculation is the reason why the asserted defense was not put forward at the time of original pleading. In this regard we note again that the language in which appellant's guilty plea was couched—"Your Honor, I participated knowingly, however, I would like it to be noted unwillingly"—is by no means inconsistent with the coercion theory urged at the withdrawal motion. See *supra* p. 1328. But it was not until the withdrawal motion that appellant explicitly addressed his coercion defense to the attention of the trial court. The reason why this defense was not formally asserted at or before the Rule 11 plea proceeding is a factor to be considered in determining whether or not to grant the withdrawal motion.

The trial court described appellant's explanation as his fear of reprisals against himself and his family by Bass and other members of the Moorish Science Temple of America if he went to trial. In the words of the trial court when it denied the guilty plea withdrawal motion, "[t]he defendant now asserts that although he is no longer a member of that sect, he would be exposed to retribution by other members and, specifically, the codefendant should the defendant betray the codefendant." In this respect the reason given for failing to previously assert the coercion defense, although conceptually distinct, overlapped with the asserted coercion defense itself.

The trial court's own words and actions belied its conclusion, in denying the withdrawal motion, that appellant's fears of Bass if he went to trial were "speculative." On three separate occasions the trial court ordered the entire record in the case sealed in order to protect appellant from Bass. At the end of the hearing on the withdrawal motion, but before its denial, the trial court ordered that appellant be afforded protective custody in light of a recent assault upon him while in custody by unknown assailants. The trial court described efforts to segregate appellants from members of the Moorish sect as "worthy requests" and observed that it was "concerned about Mr. Gooding's safety." The trial court further demonstrated its belief that appellant's fears were legitimate by ordering a separation from Bass while in custody, "so that at the appropriate time Mr. Gooding can be put somewhere that, where he will be free from the jeopardy that we are all concerned about." Immediately after denial of the plea withdrawal motion, and just prior to sentencing, the government informed the trial court that it was prosecuting Bass for a prison breach. The trial court's and the government's remarks during sentencing similarly showed their recognition that appellant's fears of his codefendant were genuine. See *supra* note 21.

**22.** The entire government proffer was as follows:

> Your Honor, the government's evidence at trial would show that on April 5th and April 6th of 1982, the complainant in this case, Mr. Lawrence McIntyre, was held against his will and abducted against his will by the defendant and others. The kidnapping began at 12th and New York Avenue, Northwest, here in the District of Columbia, where the complainant was abducted at point of gun. He was hand-

> cuffed there, he was—there was someone who stood guard over him for a period of time. He was then moved against his will up to Baltimore, Maryland, and Springfield, Virginia. All against his will during the course of which he was also assaulted with a gun.

**23.** During entry of the plea, appellant's counsel alerted the trial court to the inadequacy of the government proffer.

In addition, appellant's former counsel testified that, prior to entry of the guilty plea, appellant "was afraid of any court proceeding where he would have to say anything one way or the other about Bass." Appellant's refusal to testify due to fear of Bass, coupled with the fact that coercion "is a very difficult defense to raise," prompted his counsel to discourage him from reliance upon that defense. She told the trial court that appellant

> did not want to testify. And that the only way that this defense would even have a prayer of a chance is that Mr. Gooding were to testify all about Mr. Bass and why he was afraid of him and all of Mr. Bass's extremely erratic actions and why he was afraid of him. And Mr. Gooding doesn't want Mr. Bass to hear about this.

The uncontradicted testimony of appellant's former attorney casts further doubt on the question whether the guilty plea represented "a voluntary and intelligent choice between the alternative courses of action open to [appellant]." [24] *Byrd, supra,* 377 A.2d at 404.

It is unnecessary for us to conclusively evaluate appellant's fear of reprisals against himself and his family as the reason why he failed to assert the coercion defense at the time of original pleading. Presentence withdrawal motions are to be freely allowed. The evidence at the disposal of the trial court was sufficient to rank as a positive factor in the fair and just calculation appellant's fear of Bass as a reason for not invoking the coercion defense at the time of original pleading.[25]

*The Length of Delay between Entry of the Guilty Plea and the Desire to Withdraw it*

Next, we turn to the delay of only a few days between entry of the guilty plea on November 30, 1983, and the expression of appellant's desire to withdraw it. Appellant testified that, due to the particular section of the jail in which he was housed, he had no access to the law library until the day after entering the plea. Then, upon discovering the full consequences involved, he immediately placed a call to the attorney who represented him at that time and informed her that he was seriously considering its withdrawal. About a week later, appellant notified the trial court to the same effect, whereupon new counsel was appointed to represent him. A formal motion to withdraw the guilty plea, together with points and authorities, was filed on January 30, testimony was presented on April 23, and the motion was denied on May 18, 1984. There can be no suggestion that undue delay either cast doubt on appellant's asserted reason for failing to raise the coercion defense earlier or prejudiced the government's legitimate interests. This factor accordingly lends considerable weight in favor of withdrawal of the guilty plea under the fair and just standard.

*Prejudice to the Government*

The government has made no claim of prejudice to its legitimate interests nor, presumably, could it do so, given the speed with which appellant moved to withdraw the guilty plea. The lack of prejudice to the government favors withdrawal.

*The Competent Assistance of Counsel*

Finally, we note the trial court's finding that appellant had the benefit of competent counsel at the time the plea was entered. Although such a finding adds weight to its conclusion that withdrawal of the guilty plea would not be fair and just, the impact is to some extent reduced by the circumstances of this case. First, the inherent

---

**24.** This testimony was not discredited. The trial court relied upon it to dispose of appellant's alternative claim of ineffective assistance of counsel.

**25.** As we have discussed in Part III of this opinion, the record of the Rule 11 inquiry is of little assistance in assessing the validity of appellant's claim that his guilty plea was influenced by fear of Bass. An adequate Rule 11 inquiry, while not precluding a subsequent claim of involuntariness, would make it considerably less likely to succeed.

ambiguity in appellant's responses at the time the guilty plea was entered implies the possibility of some confusion as to the nature of the coercion defense, irrespective of the ability with which he was advised by counsel. Second, appellant's testimony throughout the motion to withdraw the guilty plea was consistent with this possibility.[26] Third, the testimony of his counsel at the time the plea was entered corroborated appellant's fear of Bass as a reason for entry of the guilty plea. Fourth, the speed with which appellant attempted to change his plea and obtain new counsel after pleading guilty suggests a breakdown in communication at some point, even if neither attorney nor client was at fault. These considerations reduce to some extent the tendency of the existence of competent counsel to weigh against a finding that withdrawal of the guilty plea would be fair and just.

█ With the qualified exception of the benefit of competent counsel, all of the factors we have identified weigh more or less in favor of the conclusion that withdrawal of the guilty plea should have been allowed. Although, as we have already noted, the decision whether or not to grant the motion is vested in the sound discretion of the trial court, we conclude that this discretion has been abused. Appellant's motion was brought prior to sentence and he was therefore not required to show manifest injustice. Instead, appellant had to cross a much lower threshold. He was obliged to show only that, for any reason, it was fair and just that his plea be withdrawn. We think that the facts of this case amply support such a showing and that in denying his motion to change the plea the trial court set a standard beyond that which appellant was required to reach. Prior to sentencing, leave to withdraw guilty pleas under the fair and just standard should be freely allowed. *Durante v. United States,* 309 A.2d 321, 323 (D.C. 1973); *United States v. Morgan,* 185 U.S. App.D.C. 372, 386, 567 F.2d 479, 493 (1977); *Poole, supra,* 102 U.S.App.D.C. at 75, 250 F.2d at 400. Applying this guiding principle to the record before us we must conclude that "the trial court's action was [not] within the range of permissible alternatives." *Johnson v. United States,* 398 A.2d 354, 367 (D.C.1979). In the totality of the circumstances of this case, even disregarding the Rule 11 violation, it was fair and just that the Rule 32(e) withdrawal motion be granted.[27]

**26.** Appellant testified: "In my mind ... I was never ... considered myself as being guilty of that crime that I pleaded guilty to." And, at another point:

> What I would like to say is that as far as my guilt or innocence would—in my opinion would be dependent on the person that is interpreting it. I'm not saying that I wasn't present during these events, I'm merely saying that any participation that I'm alleged to have had concerning this was not willingly or voluntary. I'm not saying that it didn't occur.

**27.** Significantly, our dissenting colleague concurs with our evaluation of all but one of the factors relevant to the conclusion that withdrawal of the guilty plea would be fair and just. Specifically, in the order in which they appear in Part IV of our opinion, the dissent acknowledges that: (1) the government's proffer was "not inconsistent with a coercion defense," see *infra* dissent note 16; (2) the record provides support for appellant's explanation for not asserting his coercion defense at the time of original pleading ("The trial court did accept that

appellant had feared Bass"), see *infra* dissent p. 1339; (3) "appellant took immediate steps to withdraw his plea," see *infra* dissent note 16; and (4) "the government has not specifically shown how it would be prejudiced from withdrawal of appellant's guilty plea," see *infra* dissent note 16. There is no dispute between us that one factor, the competent assistance of counsel, supports the trial court's ruling.

The dissent's unstated, but necessary, conclusion that withdrawal of the plea would not be fair and just rests solely on its analysis of the one remaining factor, *i.e.,* whether appellant claimed legal innocence. On this issue, the dissent's inquiry into the merits of appellant's asserted coercion defense "seriously misconceives the ... court's role" in these withdrawal motions. *Morgan, supra,* 185 U.S.App.D.C. at 386, 567 F.2d at 493 (citing *Gearhart, supra,* 106 U.S.App.D.C. at 273, 272 F.2d at 502). Even if it were not forbidden, the dissent's analysis of the asserted coercion defense wrongly focuses on when the threats were made, ignoring the real question for the factfinder—whether appellant had "a well-grounded apprehension of immedi-

## Conclusion

The trial court failed to conduct an adequate Rule 11 inquiry in the face of appellant's cryptic responses to critical questions and an inconclusive government proffer of guilt; we are thus left with doubts as to whether appellant's plea was supported by a factual basis and as to whether it was voluntarily and intelligently entered. Because of this Rule 11 violation, the trial court should have granted appellant's Rule 32(e) motion to withdraw the guilty plea. Even if there were no Rule 11 violation in this case, a review of the record in light of the relevant factors leads to the inescapable conclusion that it was fair and just that appellant's presentence withdrawal motion be granted. On both grounds we reverse, so that appellant can have the opportunity to put his asserted coercion defense before a jury.

*Reversed and remanded for further proceedings in accordance with this opinion.*

FERREN, Associate Judge, dissenting:

Appellant pleaded guilty to one count of kidnapping, a lesser-included offense of kidnapping while armed, in exchange for the government's dropping three other counts of kidnapping while armed, two counts of threatening to injure a person, and one count of obstruction of justice. I conclude that the records of the hearings on the plea and on the pre-sentence motion to withdraw the plea support both (1) the trial court's finding that appellant voluntarily and knowingly entered the plea, *McCarthy v. United States*, 394 U.S. 459, 466, 89 S.Ct. 1166, 1170, 22 L.Ed.2d 418 (1969), and (2) the trial court's discretionary ruling that, to be "fair and just" under the circumstances, *Kercheval v. United States*, 274 U.S. 220, 224, 47 S.Ct. 582, 583, 71 L.Ed. 1009 (1927), the court need not permit withdrawal of the plea.

My colleagues conclude, to the contrary, that the plea was not voluntary and knowing. If that were true, of course, withdrawal of the plea should be granted automatically, *McCarthy*, 394 U.S. at 471–72, 89 S.Ct. at 1173–74; the majority would have no reason to proceed to a second ground for reversal. Nonetheless, for some reason, my colleagues alternatively premise reversal on the failure of the trial court to honor appellant's timely motion to withdraw based primarily on a claim of legal innocence. The majority's premise, however, is incorrect; appellant never effectively asserted his legal innocence. Thus, the majority's fallback argument also fails.

### I.

In his Super.Ct.Crim.R. 32(e) motion to withdraw the plea, appellant, through new counsel, advanced three arguments. First, he asserted the plea had been involuntary because of the pressures of personal circumstances concerning his family, as well as intolerable conditions of confinement at the District of Columbia jail. Next, appellant claimed his plea had been unknowing, and thus not truly voluntary, because previous counsel had provided ineffective assistance in two respects: (a) counsel allegedly had failed to provide information appellant had requested about the backup time he would have to serve, after parole revocation, if convicted on the instant charges, and (b) counsel allegedly had failed to advise fully about available defenses, including consent of the victim, lack of specific intent, and coercion by the co-defendant, Kenneth Bass.

At the hearing on the Rule 32(e) motion, appellant suggested a fourth basis for withdrawal of the plea. He testified that

---

ate death or serious bodily injury." *Stewart v. United States*, 370 A.2d 1374, 1377 (D.C.1977).

Also unsupported is the dissent's position that the absence of a claim of innocence—a claim which repeatedly appears in the record of this case—would in any event somehow automati-

cally override all the other relevant factors. By requiring the accused to convince the court of his or her innocence before getting to a jury, the dissent would replace the time-honored presentence fair and just standard with the strictest of postsentence manifest injustice standards.

his plea had been involuntary because it had been induced by fear of reprisals against himself and his family if he went to trial and defended by testifying against his co-defendant, Bass. He did not, however, assert his legal innocence.

After the hearing, appellant's attorney submitted proposed findings of fact addressed to each of the four asserted grounds for withdrawal. He conceded both ineffectiveness of counsel claims—including the claim that appellant had not been effectively counseled on the coercion defense.[1] He also essentially conceded the assertion of involuntariness based on appellant's personal circumstances at the time of the plea.[2] Counsel therefore conceded all three arguments stated in the written motion to withdraw. Counsel's proposed findings dealt only with the fourth issue, presented for the first time at the hearing: involuntariness of the plea attributable to fear of co-defendant Bass.

Counsel also submitted proposed conclusions of law. Curiously, instead of citing cases to support the only argument remaining after the hearing—involuntariness based on fear—counsel supplied conclusions of law addressed to withdrawal of the plea on still another, not previously asserted ground: a claim of legal innocence. Counsel acknowledged, however, that a defendant does not have an absolute right to withdraw a guilty plea before sentencing, even when asserting legal innocence.[3]

The trial court denied the motion to withdraw. After disposing of the alleged inef-fectiveness of counsel claims, *supra* note 1, the court perceived only one remaining issue and rejected appellant's claim of an involuntary plea based on his asserted fear of Bass.

We therefore have three principal issues to resolve: (1) whether the trial court erred in finding appellant voluntarily and knowingly pleaded guilty—an inquiry that focuses both on the adequacy of the plea hearing, Super.Ct.Crim.R. 11, and on the evidence adduced at the plea withdrawal hearing, Super.Ct.Crim.R. 32(e); (2) whether the trial court should have recognized and ruled upon appellant's claim of legal innocence asserted for the first time, after the plea withdrawal hearing, in appellant's proposed conclusions of law; and (3) if so, whether the record supports a claim of legal innocence that might justify withdrawal of the plea.

II.

A guilty plea waives several constitutional rights. *McCarthy*, 394 U.S. at 466, 89 S.Ct. at 1170. Thus, to accord due process, the trial court must be sure that the defendant has entered the plea "voluntarily after proper advice and with full understanding of the consequences." *Machibroda v. United States*, 368 U.S. 487, 493, 82 S.Ct. 510, 513, 7 L.Ed.2d 473 (1962) (quoting *Kercheval*, 274 U.S. at 223, 47 S.Ct. at 583). Put another way, because the plea represents "an intentional relinquishment or abandonment of a known right or privilege," *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938),

---

1. According to the proposed findings: "trial counsel appears to have been diligent and thorough both in her preparation and in her advice to the Defendant throughout these proceedings. Accordingly, counsel for Defendant on this motion has chosen to submit on the Defendant's claims of ineffective assistance of counsel."

 In denying appellant's motion to withdraw the plea, the trial court confirmed counsel's observation. Specifically, the court found that previous "counsel pursued coercion and duress defenses," among others, and "at all times acted within the standards expected of a member of her profession."

2. Counsel simply noted, without protest, that "this Court had made a preliminary determination that, even if unrebutted by the government, the personal circumstances in the defendant's life, which have been asserted in some detail in his motion, did not render the plea either involuntarily or unintelligently made."

3. *Austin v. United States*, 356 A.2d 648, 649 (D.C.1976) (per curiam) (no absolute right to withdraw guilty plea before sentencing, even when defendant asserts legal innocence); *Everett v. United States*, 119 U.S.App.D.C. 60, 64, 336 F.2d 979, 983 (1964) (no absolute right to withdraw guilty plea before sentencing).

the plea must be "equally voluntary and knowing." *McCarthy*, 394 U.S. at 466, 89 S.Ct. at 1171.

These two, fundamental criteria—"voluntary" and "knowing"—are interrelated. A plea cannot be "truly voluntary," *id.*, unless the defendant not only (1) is free of coercion or other unfair inducement but also (2) knows all the elements of the crime charged, admits complicity when confronted with facts sufficient to establish guilt, and understands the potential consequences of entering the plea, *see id.* at 466–67, 89 S.Ct. at 1170–71. In short, in accepting a guilty plea, the trial court must be sure, at the Rule 11 hearing, that the defendant not only confirms a free-will decision based on competent advice and known consequences, *Machibroda*, 368 U.S. at 493, 82 S.Ct. at 513, but does so with an understanding that the admitted conduct actually embraces all the elements of the charged offense. *McCarthy*, 394 U.S. at 467, 89 S.Ct. at 1171.[4]

### A.

Everyone agrees that, at the plea hearing, the trial court followed all Rule 11 procedures except for the two principal inquiries: whether "the plea is voluntary and not the result of force or threats," Super. Ct.Crim.R. 11(d), and whether "there is a factual basis for the plea," *id.* Rule 11(f), sufficient to confirm a knowing waiver.[5]

As to the first, in response to the court's questions about whether the plea was "voluntary," Rule 11(d), appellant testified that no one had said or done anything that caused him to believe he had to plead guilty, that no one had made promises not stated in open court, that he understood the rest of the charges would be dropped, that he was satisfied with the services of his attorney, and that no one had promised him how the court would sentence him. The court then asked: "Are you under the influence of any drug, alcohol, or medication, *or anything else for that matter* that would prevent you from being able to think clearly or otherwise make an intelligent decision on your behalf?" (Emphasis added). Appellant answered: "No sir." Ostensibly, therefore, appellant's plea was voluntary.

Then came the following colloquy, government proffer, and follow-up exchange:

The Court: Are you pleading guilty to this count of unarmed kidnapping because you committed the crime?

Appellant: In that respect, yes, sir.

The Court: There's not going to be any hedging here.

Appellant: In a respect.

Defense Counsel: Yes.

The Court: All right. I'll hear the government's proffer.

---

**4.** Before *McCarthy v. United States*, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969), the Court had established "a three-pronged test: The plea of guilty must be made voluntarily, it must be made after proper advice, and it must be made with full understanding of the consequences." *Henderson v. Morgan*, 426 U.S. 637, 653, 96 S.Ct. 2253, 2261, 49 L.Ed.2d 108 (1976) (Rehnquist, J., dissenting) (citing *Machibroda v. United States*, 368 U.S. 487, 493, 82 S.Ct. 510, 513, 7 L.Ed.2d 473 (1962) and *Kercheval v. United States*, 274 U.S. 220, 223, 47 S.Ct. 582, 583, 71 L.Ed. 1009 (1927) ). *McCarthy*, in effect, added a fourth requirement; it "extended the definition of voluntariness to include an 'understanding of the essential elements of the crime charged,'" *Henderson*, 426 U.S. at 652–53, 96 S.Ct. at 2261 (Rehnquist, J., dissenting) (citation omitted), so that the defendant would know for sure what the substance of the plea meant.

**5.** In conducting the Super.Ct.Crim.R. 11 inquiry, the trial court explained that appellant had a right to trial by jury, that the government had the burden of proof beyond a reasonable doubt, that appellant had the right to counsel throughout the trial, that counsel could cross-examine government witnesses, that appellant could present a defense with the court's help in subpoenaing witnesses, that appellant could testify in his own behalf, that the jury would be instructed on the presumption of innocence, and that, if convicted, appellant had a right of appeal. The court then explained that if appellant pleaded guilty he would waive the right to trial and appeal except for the right to appeal an illegal sentence. Appellant confirmed that he understood. The court then explained the elements of the crimes charged and confirmed that appellant was aware he could be sentenced to life imprisonment as a result of the plea.

The Prosecutor: Your Honor, the government's evidence at trial would show that on April 5th and April 6th of 1982, the complainant in this case, Mr. Lawrence McIntyre, was held against his will and abducted against his will by the defendant and others. The kidnapping began at 12th and New York Avenue, Northwest, here in the District of Columbia, where the complainant was abducted at point of gun. He was handcuffed there, he was—there was someone who stood guard over him for a period of time. He was then moved against his will up to Baltimore, Maryland, and Springfield, Virginia. All against his will during the course of which he was also assaulted with a gun.

The Court: What I need to know now is did you or did you not participate as a knowing associate in the undertaking in the kidnapping as I have described it to you of Mr. Lawrence McIntyre?

Appellant: Yes, Your Honor, I participated knowingly, however, I would like it to be noted unwillingly. It was knowingly.

The Court: You did it voluntarily but you had reservations, is that what you're saying?

Appellant: Yes, sir.

This sequence was intended to establish the "factual basis for the plea," Rule 11(f), in order to assure the court that appellant realized his conduct "actually [fell] within the charge." *McCarthy*, 394 U.S. at 467, 89 S.Ct. at 1171 (footnote omitted). Appellant was not consciously proposing an *Alford* plea while claiming innocence.[6] Thus, the trial court had to be sure that appellant clearly acknowledged he had participated in the crime—the elements of which the court had explained, *supra* note 5—since "hedging" on that question might cast doubt on whether the plea was knowing and thus truly voluntary. *See McCarthy*, 394 U.S. at 466–67, 89 S.Ct. at 1170–71.

After the government's proffer summarizing the events of the crime and appellant's role in it, appellant acknowledged that he had participated "knowingly" but "unwillingly." Appellant then accepted the court's reformulation of his answer in an effort to clarify: he had participated "voluntarily" but with "reservations." The government's proffer and appellant's responses unquestionably confirm "a factual basis for the plea." Rule 11(f). Appellant argues, however, that his use of the words "unwillingly" and "reservations" should have caused the court to pin down more precisely what he meant, with a view to eliciting "potential coercive forces" which may have suggested that, although the plea had a factual basis, the plea was nonetheless involuntary. I disagree.

Without additional clarification, appellant's responses could have meant that he either participated in the crime reluctantly, out of moral qualms, or felt pressed to do so, out of some undisclosed fear. But these responses were not sufficiently "hedging," in light of the government's proffer and appellant's own earlier testimony, to suggest doubt about whether the *plea itself* was voluntary and knowing. As the government correctly points out in its brief: "The 'hedging,' if any, which appellant expressed during the plea proceeding ... was *not* related to whether he was voluntarily entering his plea," for which he understood the elements of the crime and the factual basis, "but was directed at his characterization of his participation in the kidnapping...." This distinction is telling. In unequivocally acknowledging his participation in the crime, however reluctantly he may have participated, appellant said enough to satisfy the court—and reasonably so—that there was a factual basis for the plea. This acknowledgment was sufficient, when coupled with appellant's earlier testimony that he was not pleading guilty under compulsion, to sustain the court's

6. *North Carolina v. Alford,* 400 U.S. 25, 37–38 & n. 10, 91 S.Ct. 160, 167–168 & n. 10, 27 L.Ed.2d 162 (1970) (trial court may accept guilty plea when government demonstrates strong factual basis for plea and defendant clearly expresses desire to enter plea, in his or her interest, despite professing innocence).

finding of a voluntary and knowing plea (in contrast with any reservations appellant may have expressed about participating in the crime months earlier).

In short, at the Rule 11 hearing, appellant was informed of the elements of the crime (including specific intent), acknowledged he had the benefit of satisfactory legal counsel, and admitted participation in the criminal event proffered by the government. I do not believe the trial court had an additional obligation to assure that appellant expressly waived a coercion defense simply because he acknowledged reservations about his participation in the crime. The trial court could properly understand the government's proffer and appellant's responses, despite their ambiguity as to why he committed the offense, to mean that he knew he had participated in a clearly explained crime, and that he believed it would be prudent to plead guilty, for whatever reduction of charges and benefit at sentencing that plea could provide, irrespective of any possible defense. So much for the Rule 11 hearing.[7]

### B.

Even if I am wrong in concluding that the trial court probed deeply enough at the plea hearing, the later hearing on appellant's motion to withdraw the plea, Super. Ct.Crim.R. 32(e), makes clear that appellant's "hedging" at the earlier hearing did not imply an involuntary or unknowing plea. At this second hearing, appellant asserted that his plea had been involuntary because he had feared reprisals by co-defendant Bass if he had gone to trial and testified—*not* because he had a solid defense which no reasonable person would have waived by entering a plea. This distinction is important, for, as appellant's own testimony at the hearing established, competent counsel, *supra* note 1, had informed appellant that a coercion defense was problematic at best.[8] Thus, appellant knew it was prudent to plead guilty for whatever advantages that could bring rather than to present a weak defense at trial with the additional risk of incurring Bass' wrath.

The trial court, as the majority notes, did accept that appellant had feared Bass, and the court, out of an abundance of caution, even took measures to protect appellant. But the court denied the motion to withdraw because it concluded that appellant's

7. The cases the majority primarily relies upon are inapposite, for in each the defendant made ostensibly contradictory statements about whether he voluntarily and knowingly waived the plea, and the trial court erroneously failed to clarify what the defendant meant. *Mack v. United States,* 635 F.2d 20, 23, 24 (1st Cir.1980) (defendant said " 'I am being pressured into making the plea. I am not doing it of my own free will.' " Later in the hearing, he confirmed the plea was "entirely free and voluntary"); *Canady v. United States,* 554 F.2d 203, 204 (5th Cir.1977) (court had accepted plea to charge of possessing counterfeit money with intent to defraud, a specific intent crime, without clarifying defendant's statement that, "as far as having any mischievous intentions, that I do not admit"); *United States v. Kincaid,* 362 F.2d 939, 940–41 (4th Cir.1966) (at plea hearing, defendant said he had turned himself in because he " 'needed medical treatment or something' " after which court accepted plea without probing defendant's "mental processes," explaining "the elements of the crime," or informing defendant about "the effect of a guilty plea").

In contrast, appellant was informed of all the elements of the crime, including specific intent; and, after hearing the government's proffer, he admitted his knowing though reluctant participation in the kidnapping. He never hinted at the Rule 11 hearing, contrary to his express testimony, that he had felt pressure to plead guilty. He hedged only to the extent of saying he had participated "unwillingly," *i.e.,* with "reservations"—at most a disguised implication that he may have had an affirmative defense, coercion, which for some unexplained reason he did not take seriously enough to warrant a trial instead of a plea.

8. At the Rule 32(e) hearing, previous counsel testified that a coercion defense would have been weak, even if appellant had been willing to testify, since, among other things, he would have had to prove he had no reasonable opportunity to escape. The facts belied such a claim, however, because appellant—alone—had taken one of the captives to the bus station, but, instead of assuring both of their escapes, he had returned with the captive to Bass' apartment. *Infra* Part IV.

fear had been too "speculative" to render the plea itself involuntary instead of merely prudent. At most, according to the court, the fear of Bass presented a difficult choice leading appellant, who had been competently counseled about the weak prospects for a coercion defense, *supra* notes 1 and 8, to plead guilty as the "lesser of two evils."

I perceive no basis for second-guessing the trial court's ruling here; there was no abuse of discretion. *See Patterson v. United States,* 479 A.2d 335, 340 (D.C. 1984). Appellant at no time proffered threats from Bass that could be said to have presented a tangible concern. But, even more important, the revelation that, in counsel's opinion, a coercion defense probably would have failed makes clear that appellant's "hedging" at the Rule 11 hearing related only to his own, lay perceptions about criminal responsibility, not to the voluntariness and intelligence of his judgment in pleading guilty in view of a weak defense and his fear of Bass. Put another way, the only reason appellant's alleged fear of Bass could have enough credibility to suggest an involuntary, unintelligent plea would be if the record showed that appellant believed he had a defense worthy of taking his chances at trial but that he had been too afraid to risk a trial. The record establishes, to the contrary, that appellant knew he had little chance with a coercion defense. Thus, appellant is reduced, in effect, to asking to withdraw his plea simply because he now wants a trial, not because genuine fear, rather than good judgment, induced the plea. Accordingly, even if the trial court should have more vigorously pursued appellant's "hedging" at the Rule 11 hearing, the hearing on the motion to withdraw supported the court's ruling. Appellant pleaded guilty because he participated in the kidnapping and did not have a realistic defense, not primarily because he feared Bass.

The question, then, is not whether appellant's plea was voluntary and knowing—it was—but whether the majority can properly base this court's ruling, instead, on a timely assertion of legal innocence.

### III.

As noted earlier, appellant made no reference to legal innocence, based on a coercion defense, until his counsel filed proposed conclusions of law after the hearing on the motion to withdraw. Although counsel cited only four grounds for withdrawal at the hearing and in his proposed findings of fact—two based on ineffectiveness of counsel and two premised on involuntariness—he abruptly shifted ground when he came to the proposed conclusions of law.

Counsel stressed that under *Kercheval's* "fair and just" standard, 274 U.S. at 224, 47 S.Ct. at 583, applicable to pre-sentence withdrawal motions, a defendant's assertion of innocence weighs heavily in favor of permitting withdrawal of the plea.[9] This is especially true, counsel noted, when the defendant has moved to withdraw soon after the plea was entered.[10] Counsel acknowledged, however, that if the defendant's factual contentions, taken as true, do not make out a legal defense, the assertion of innocence is ineffectual.[11] Counsel then summarized his position: "Here, the defendant has asserted his legal innocence, there appear to exist legal defenses to the charges against him, and his failure to assert those defenses rather than enter the plea he now seeks to withdraw was the direct result of his fear that any successful defense would have required him to place the blame upon co-defendant Kenneth

---

9. *Jordan v. United States,* 350 A.2d 735, 737 (D.C.1976) ("claim of legal innocence" is "'compelling consideration'"); *United States v. Barker,* 168 U.S.App.D.C. 312, 324, 514 F.2d 208, 220, *cert. denied,* 421 U.S. 1013, 95 S.Ct. 2420, 44 L.Ed.2d 682 (1975) (assertion of "legal innocence is an important factor").

10. *Barker,* 168 U.S.App.D.C. at 326, 514 F.2d at 222.

11. *Jordan,* 350 A.2d at 737–38; *Barker,* 168 U.S. App.D.C. at 324, 514 F.2d at 220.

Bass, a man who he feared would retaliate with acts of violence against the Defendant and his family." Counsel also pointed out that the defendant had "promptly informed counsel, the court, and the probation officer assigned to his presentence investigation that the defendant wished to withdraw his plea before sentencing."

Before assessing what counsel was attempting to argue, I believe it is important to note that a claim of innocence, as a basis for withdrawing a plea, is theoretically separate from a claim of involuntariness. *See Kercheval,* 274 U.S. at 223–24, 47 S.Ct. at 583; *United States v. Barker,* 168 U.S. App.D.C. 312, 325, 514 F.2d 208, 221, *cert. denied,* 421 U.S. 1013, 95 S.Ct. 2420, 44 L.Ed.2d 682 (1975). One is entitled to withdraw a plea, based on a showing it was involuntary, without claiming innocence, *see Byrd v. United States,* 377 A.2d 400, 404–05 (D.C.1977); and one may be granted the right to withdraw, based on a timely assertion of innocence, even though voluntariness of the plea is not questioned, *see Barker,* 168 U.S.App.D.C. at 320, 325, 514 F.2d at 216, 221; *Gearhart v. United States,* 106 U.S.App.D.C. 270, 272, 272 F.2d 499, 501 (1959). Thus, if a defendant wishes to cite both grounds, that should be made clear. The trial court should not be expected to evaluate a basis for withdrawal which the defendant does not expressly proffer. *See Jordan v. United States,* 350

A.2d 735, 737 (D.C.1976); *Everett v. United States,* 119 U.S.App.D.C. 60, 63–64, 336 F.2d 979, 982–93 (1964).[12]

Although counsel, in his post-hearing proposed conclusions of law, referred to caselaw justifying withdrawal of a guilty plea based on an assertion of legal innocence, he did not—even then—clearly cite appellant's innocence, based on apparent defenses, as an independent ground justifying withdrawal of the plea. Rather, counsel used the apparent availability of defenses only to buttress appellant's basic argument that the plea had been involuntary. More specifically, counsel's statement that "there appear to exist legal defenses" was intended to show that appellant's fear must have been considerable—and thus his plea of guilty must have been involuntary— since he appeared to have a valid basis for believing he might prevail at trial.[13]

Accordingly, although a claim of innocence is commonly asserted as an independent ground justifying withdrawal of a guilty plea, even when the plea was voluntary, counsel for appellant never expressly asked the trial court to accord appellant's claimed innocence that independent status. Counsel did not request the court, in the alternative, to grant the motion to withdraw, based on a timely assertion of legal innocence, if the court rejected the princi-

12. It is possible, of course, that the same evidence can contribute to claims of involuntariness and innocence. For example, the failure to learn of an available defense because of incompetent counsel can have a bearing both on whether the plea was truly voluntary and knowing and on whether the defendant has a basis for subsequently claiming legal innocence. But such double use of the evidence does not suggest that the two legal grounds for withdrawal lose their conceptually distinct identities. Thus, it is important for a defendant to make clear to the trial court exactly what ground or grounds are being advanced on the basis of such evidence.

13. Initially, in his motion to withdraw the plea, appellant claimed that counsel had been ineffective in failing to inform him about the availability of "legal defenses," and thus that his plea

could not have been voluntary and intelligent. At the hearing on the motion, however, this assertion was exposed as false. *See supra* note 8. As a result, in his post-hearing proposed findings and conclusions, appellant shifted his ground. He acknowledged that counsel had been effective. He then used previous counsel's testimony that appellant had known all about his defenses, including the coercion defense, as evidence to support his contention that he had elected out of fear—and thus not voluntarily— the "lesser of two evils": to plead guilty, despite available defenses, rather than risk reprisals from co-defendant Bass. The problem with this strategy, however, was that it ignored how weak appellant's defenses were, as the hearing made clear. Fear of Bass was offset by a weak defense. *Supra* Part II.B.

pal claim that the guilty plea had been involuntary.[14]

Because appellant (as I read the record) premised his motion to withdraw solely on involuntariness of the plea, I believe the majority cannot properly invoke another ground for withdrawal which appellant, himself, did not clearly assert before the trial court. *See Jordan,* 350 A.2d at 737.[15]

## IV.

An assertion of innocence is virtually a prerequisite to withdrawal of a voluntary plea under the majority's own analysis. *Everett,* 119 U.S.App.D.C. at 63 n. 10, 336 F.2d at 982 n. 10 (failure to assert innocence, although not dispositive, "certainly militates against withdrawal" of guilty plea). But, even if the record should be read to suggest that appellant, alternatively, had asked to withdraw his plea based on an assertion of legal innocence, that contention would have to fail. As noted earlier, he did not give testimony that could convince any court a coercion defense, supporting a finding of innocence, was realistically available.[16] Because of the majori-

---

**14.** Counsel may have focused exclusively on involuntariness for sound tactical reasons. Proof of involuntariness, premised on a violation of Rule 11, would make withdrawal of the plea automatic. *McCarthy,* 394 U.S. at 471–72, 89 S.Ct. at 1173–74, without regard to whether the defendant claimed innocence. In contrast, a motion to withdraw based on an assertion of innocence would require a proffer of facts that establish a defense, *see Jordan,* 350 A.2d at 737–38, as well as an evaluation of additional factors such as competency of counsel who advised the plea, length of delay between the plea and the effort to withdraw, and prejudice to the government. *Barker,* 168 U.S.App.D.C. at 325–26, 514 F.2d at 221–22. Appellant's claim of innocence is premised exclusively on a defense of coercion. Appellant's and his previous counsel's testimony at the plea withdrawal hearing, however, effectively precluded a coercion defense. *Supra* Part II.B.; *infra* Part IV. Counsel therefore may have concluded that the more he highlighted a claim of innocence based on an extremely weak, if not bogus, coercion defense, the more likely the trial court would be to doubt the intensity of appellant's fear that allegedly compelled a plea of guilty. Counsel could effectively present his client's fear, through appellant's own testimony, that caused him to forego "legal defenses" (as counsel put it) if the validity of those defenses was not too closely scrutinized. He might not as effectively show that fear if it became clear that the only possible defense, coercion, would not have worked in any event.

**15.** I must acknowledge, in fairness to appellant, that his counsel at least hinted that legal innocence was a fifth ground for withdrawal of the plea, although he did not expressly say so. The question, then, is whether the trial court was obligated to take the hint. In an opinion I find troublesome, this court has said yes—and no. In *Taylor v. United States,* 366 A.2d 444 (D.C. 1976) (per curiam), on the date originally set for sentencing, appellant moved to withdraw his guilty plea because, as he told the court, "'the

defense witnesses in my case can testify for me.'" *Id.* at 446. The trial court conducted no further inquiry and took the motion under advisement. The court eventually denied the motion on the ground the plea had been voluntary. We noted that one ground for pre-sentence withdrawal of a plea is "a claim of legal innocence" and that "the trial court articulated only one concern, namely, voluntariness, and no formal hearing was held." *Id.* at 447. We cautioned that, for presentence requests for withdrawal, "full inquiry should be made beyond the confines of the Rule 11 hearing." *Id.* We affirmed, however, because the judge had given the motion meticulous attention, the defendant had been given an opportunity to speak personally, the proffered evidence of guilt was overwhelming, there was no hint of coercion, ignorance, or incapacity, and the reasons given for a change of heart did not amount to a claim of legal innocence. *Id.* I think this decision was wrong; the trial court should have afforded appellant an opportunity to develop his point further so that the court could have learned whether appellant had witnesses who could have provided an articulable, facially valid defense. The present case, however, is different. Appellant had a comprehensive Rule 32(e) hearing at which he never expressly asserted legal innocence. And he did so only obliquely, after the hearing, through proposed conclusions of law that dealt directly with only the coercion defense as evidence of a fear-induced plea, not as evidence of legal innocence providing a separate ground for withdrawal of the plea. Whereas I would fault the trial court in *Taylor* for not pursuing the appellant's hinted claim of innocence at a hearing, I cannot fault the trial court in the instant case for failing, after a full hearing, to divine a claim of innocence as an independent ground for withdrawal of appellant's plea.

**16.** I agree with the majority that appellant took immediate steps to withdraw his plea, that the government's proffer and appellant's plea-hear-

ty's view to the contrary, I believe it is important to show more completely why the claim of innocence argument fails.

During appellant's testimony at the hearing on the motion to withdraw, his counsel elicited the following responses:

Q. During the course of these transactions with Mr. Bass and the complainants, were you acting independently or were you following somebody's instructions?

A. Following somebody's instructions.

\* \* \* \* \* \*

Q. Whose instructions were you following?

A. Kenneth Bass.

\* \* \* \* \* \*

Q. Did you have a belief concerning what would happen to you if you didn't follow Mr. Bass' instructions?

A. Yes, sir.

\* \* \* \* \* \*

Q. What was that belief?

A. That I would possibly be harmed or maybe even killed.

On cross-examination, the prosecutor clarified as follows:

A. What I would like to say is that as far as my guilt or innocence would—in my opinion would be dependent upon the person that is interpreting it. I'm not saying that I wasn't present during these events, I'm merely saying that any participation that I'm alleged to have had concerning this was not willing or voluntary. I'm not saying it didn't occur.

\* \* \* \* \* \*

Q. But are you saying whatever participation you had was the product of your being scared?

A. Mostly, yes, sir.

Q. And the fear is the fear you had of Mr. Bass?

A. And some influence he might have had over some other people.

\* \* \* \* \* \*

Q. *And yet it's your testimony today that Mr. Bass never threatened you?*

A. *Not during the course of those events, no, sir.*

Q. *And it's your testimony that Mr. Bass never threatened your family?*

A. *Not to my knowledge.*

(Emphasis added.)

The District of Columbia Criminal Jury Instruction 5.04 (3d ed. 1978) provides, in part, that "[c]oercion which will excuse the commission of a criminal act must be immediate and of such a nature as to induce in the defendant's mind the well-grounded apprehension of death or serious bodily injury if the act is not done." This court, citing this instruction, has interpreted it to require "a well-grounded apprehension of *immediate* death or serious bodily injury." *Stewart v. United States,* 370 A.2d 1374, 1377 (D.C.1977) (emphasis added). As appellant's own testimony indicates, his fears, while perhaps genuine, were speculative; they were not based on "immediate" coercion from Bass while the crime took place.

Furthermore, appellant testified he had told his counsel that he had taken one of the captives to the bus station and afforded him an opportunity to escape; that the captive had declined to do so; and that appellant, therefore, had returned the captive to Bass' apartment. This testimony revealed that appellant, himself, had a chance to escape, evidence further tending to undermine a coercion defense. *Cf. Stewart,* 370 A.2d at 1377 (prisoner claiming escape from custody attributable to coercion "must establish that he [or she] *imme-*

---

ing testimony were not inconsistent with a coercion defense, and that the government has not specifically shown how it would be prejudiced from withdrawal of appellant's guilty plea. But these factors become relatively insignificant when legal innocence is not effectively asserted. Had appellant clearly asserted legal innocence as an alternative ground for withdrawal of the plea, I am sure the government would have addressed the question of prejudice. But given the way appellant presented the motion, the government had no reason to believe that prejudice from withdrawal of the plea would be relevant.

*diately* returned to custody once the threat of harm was no longer imminent").

While the court "should not attempt to decide the merits of the proffered defense, thus determining the guilt or innocence of the defendant" who seeks to withdraw a guilty plea before sentencing, *Gearhart,* 106 U.S.App.D.C. at 273, 272 F.2d at 502, it is also true, as appellant's counsel acknowledged in his proposed conclusions of law for the trial court, that "[i]f the movant's factual contentions, when accepted as true, make out no legally cognizable defense to the charges, he [or she] has not effectively denied ... culpability, and [the] withdrawal motion need not be granted." *Barker,* 168 U.S.App.D.C. at 324, 514 F.2d at 220; *accord Taylor v. United States,* 366 A.2d 444 (D.C.1976); *Jordan,* 350 A.2d at 737–38.

Here, appellant's own testimony precludes any serious contention that he had a coercion defense tantamount to a claim of innocence of a crime in which he admittedly participated. Thus, even if appellant had squarely presented the trial court with a claim of innocence as an independent ground for withdrawal of the plea, the court as a matter of law could not properly have premised a discretionary ruling in his favor on that ground. *See Johnson v. United States,* 398 A.2d 354, 365 (D.C. 1979). Nor can this court.

Respectfully, therefore, I dissent.